**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

AEROSONIC LLC,

        Plaintiff,

v.

JOBY AERO, INC.,

Defendant.

Case No. 8:25-cv-554

**JOBY'S MOTION FOR PROTECTIVE ORDER
REGARDING THE SEQUENCING OF DISCOVERY**

Pursuant to Rule 26(c), Defendant Joby Aero, Inc., respectfully requests that this Court enter a protective order in relation to discovery already served on it and future discovery by Plaintiff Aerosonic LLC until the Court rules on Joby's pending motion to dismiss and motion to transfer and Aerosonic identifies its alleged misappropriated trade secrets with reasonable particularity.[1]

**INTRODUCTION**

On June 17, Aerosonic filed its First Amended Complaint alleging that Joby breached a non-disclosure agreement and, in the course of doing so, misappropriated trade secrets. On July 8, Joby moved to dismiss the FAC on several grounds. Dkt. 53.

---

[1] If the Court grants this motion, Joby respectfully requests that, in general accordance with Rules 33(b)(2) and 34(b)(2), it be granted 30 days from the Court's orders on the pending motions to dismiss and to transfer to respond to discovery requests covered by the protective order, so long as Aerosonic has identified its alleged trade secrets with particularity.

Three are relevant to this motion: (1) that, at least as to items that Joby purchased from Aerosonic, the NDA is not the operative contract; rather, it is the sales agreements that apply, so Aerosonic's breach claim fails as a matter of law; (2) that under the sales contracts, Joby was permitted to reverse engineer (though it did not) the purchased Aerosonic air probes and use the information purchased and therefore could not have misappropriated any trade secrets based on those purchases; and (3) Aerosonic has not plausibly alleged any trade secrets in its air probes and therefore cannot allege misappropriation. *Id.* at 8-24.

That same day, Joby also filed its motion to transfer this case to the Northern District of California, where Joby is headquartered and where Aerosonic's claims arise. Dkt. 52. Because the facts of the claims arose in California and most witnesses reside there, the federal court in California would be a more convenient and appropriate forum to hear this case. *Id.* This motion has yet to be decided.

Joby seeks a protective order to stage discovery on two topics. The first is on information related to Aerosonic's trade secrets. To date, Aerosonic has refused to identify with specificity the trade secrets at issue, instead alleging only categories or types of information that may be at issue. Dkt. 45. Aerosonic has committed to identifying its alleged trade secrets with particularity only after the normal course of information exchange during discovery. Dkt. 36 at 4. To preserve Joby's legal rights—especially if this Court grants Joby's transfer motion—Joby requests that this Court protect Joby from discovery related to Aerosonic's trade-secrets claim until the Court rules on the pending motions to dismiss and for transfer and Aerosonic identifies its

alleged misappropriated trade secrets with reasonable particularity. *See HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc.*, No. 22-cv-04109-TSH, 2023 WL 3259471, at *6 (N.D. Cal. May 3, 2023) (staying discovery on trade-secrets claim because plaintiff's identification of trade secrets was impermissibly vague).

The second topic for which Joby seeks a protective order is discovery related to materials and information purchased by Joby from Aerosonic under the sales contracts. As the motion to dismiss discusses in further detail, Aerosonic's claim fails as a matter of law as to the items purchased by Joby from Aerosonic because those items are governed by the sales contracts—not the NDA—which do not prohibit reverse engineering. Dkt. 53 at 9-11, 17-20. Because the NDA does not govern and the sales contracts do not prohibit reverse engineering, both Aerosonic's breach and misappropriation claims fail as a matter of law. *Id.* As a result, Joby requests that this Court protect Joby from discovery related to any items covered by the sales contracts until the Court rules on the pending motion to dismiss.

## ARGUMENT

I. **This Court Should Not Require Joby to Disclose Information Related to Aerosonic's Alleged Trade Secrets.**

    A. **Joby should not have to provide information related to Aerosonic's alleged trade secrets until Aerosonic discloses them with reasonable particularity.**

Joby is entitled to a protective order against disclosure of information related to Aerosonic's alleged trade secret categories until Aerosonic "identif[ies] for the opposing party the trade secrets at issue." *Knights Armament Co. v. Optical Sys. Tech.,*

*Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008), aff'd, 254 F.R.D. 470 (M.D. Fla. 2008).

"The plaintiff in a misappropriation of trade secret case is required to identify the trade

secrets at issue with 'reasonable particularity' *before proceeding to discovery*." *Serrala US*

*Corp. v. Paschke*, No. 3:21-cv-907-TKW-EMT, 2022 WL 2234971, at *3 (N.D. Fla.

May 16, 2022) (emphasis added) (internal citations omitted)).

Simply filing a lawsuit alleging trade-secret misappropriation "does not

automatically entitle the plaintiff to obtain disclosure of the alleged offending processes

in aid of plaintiff's pretrial discovery." *Ray v. Allied Chem. Corp.*, 34 F.R.D. 456, 457

(S.D.N.Y. 1964). Indeed, courts in this Circuit routinely delay trade-secret discovery

"until the trade secret plaintiff has sufficiently described the trade secrets at issue" for

a number of reasons, including to discourage parties from filing lawsuits as fishing

expeditions, ensure that the defendant knows the bases for the plaintiff's allegations

and determine what information is actually relevant, and protect the defendant's

ability to mount a defense. *See, e.g.*, *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676,

680-81 (N.D. Ga. 2007); *RoadSync, Inc. v. Relay Payments, Inc.*, No. 1:21-CV-3420-

MLB, 2023 WL 9692398, at *1 (N.D. Ga. May 19, 2023) (requiring reasonable

particularity so that: (1) defendants are put on notice of the nature of plaintiff's claims;

and (2) defendants can discern the relevancy of any requested discovery).

When a plaintiff does make an identification, it must be made with enough

particularity that the defendant is able to "meaningfully compare an asserted trade

secret to information that is generally known or readily ascertainable." The Sedona

Conference, *Commentary on the Proper Identification of Asserted Trade Secrets in*

4

*Misappropriation Cases*, 22 Sedona Conf. J. 223, 248 (2021). That is why, in cases like this one, where a plaintiff asserts misappropriation of aspects of an object's design, courts generally not only require identification of what aspects of the design have been misappropriated, but also *what about* or *in what way* those aspects are secret. *See, e.g.*, *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 257-59 (5th Cir. 2007) (requiring identification of seven discrete aspects of an adjustable, weighted golf club design, including details of design elements and degrees employed in the product); *Switch Commc'ns Grp. v. Ballard*, No. 2:11-cv-285-KJD, 2012 WL 2342929, at *5 (D. Nev. June 19, 2012) (requiring plaintiff to "describe what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination"); *see also AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 925 (N.D. Ill. 2001) (allegations identifying "software, designs and research" and reference projects or items by name are insufficient to identify trade secrets in question).

Here, however, Aerosonic has not adequately specified its trade secrets in its FAC, nor has it yet provided that information in the course of discovery. In essence, Aerosonic has only provided Joby with generalities about what aspects of the air probes and information are trade secrets but not the way in which they are secret or what about them makes those aspects trade secrets. For example, Aerosonic's identification of its trade secrets consists of its allegations that they generally involve (a) the dimensions and tolerances of various aspects of Aerosonic's air probes (Dkt. 45 ¶ 36)—but not what those specific dimensions and tolerances are (even though

Aerosonic acknowledges that precise dimensions are necessary to ensure performance of the air probe, *id.* ¶ 46), (b) the ratios of various dimensions of the Aerosonic air probe (*id.* ¶ 37)—but not what those dimensions are, (c) the design of the pitot chamber (*id.* ¶ 38), (d) the design of the interface side of the air probe (*id.* ¶ 39)—but not exactly what parts of the design or a detailed description of the design, and (e) various test procedures, reports, drawings, models, and other data (*id.* ¶¶ 40, 42)—but without identifying the specific procedures, reports, drawings, models, and other data and what about those items were allegedly misappropriated.

To pass muster, Aerosonic must state, for example, the specific dimensions or tolerances so that Joby and this Court can ascertain whether those specific dimensions or tolerances are known. Aerosonic must state the actual dimensions, tolerances, or ratios it claims were misappropriated. Aerosonic must include a copy of the design of the pitot chamber and interface side of the air probe in question, and photographs sufficient to illustrate them. Aerosonic must describe the specific aspects of the air probes, explain how they work together, and what makes them a trade secret in combination. And it must do so specifically for each trade secret it alleges Joby misappropriated.

In essence, while the FAC describes aspects of the design of its air probes that it believes are trade secrets, Aerosonic does not adequately allege what about those designs are secrets or in what way they are combined to be made secrets. As such, Aerosonic's allegations are nothing more than broad, categorical identifications of the subject matter of its alleged trade secrets but not an identification of the secrets

themselves. What is more, Aerosonic *does* seem to have this information. Indeed, the FAC is replete with conclusory allegations that Joby misappropriated trade secrets, without reliance on Aerosonic's information and belief. Accordingly, it seems clear that Aerosonic knows the specifics of the probes and information that it claims are secret but is choosing to hide the ball at this time. But it cannot be incumbent on Joby to guess what about those aspects of the probes and information is secret and decide what information in its own hands may be relevant to Aerosonic's protection of those characteristics. Thus, Aerosonic's listing of the air probes' subparts and general categories of information that it suspects may have been misappropriated by Joby is not a reasonably particular identification of its supposed trade secrets.

On the flip side, Aerosonic demands that Joby hand over its own proprietary documents with little concern about their relevancy or relation to Aerosonic's own air probes. For example, Aerosonic asks for "all engineering drawings" for Joby's own air probes (Ex. 1, RFP 5), every document and communication related to Joby's design of its air probes (*id.*, RFP 6), and every document and communication relating to the design and development of Joby's air probes (*id.*, RFPs 7, 8, 9, 10). This invasive document request requires Joby to throw open its doors for Aerosonic to traipse through. *RoadSync*, 2023 WL 9692398 at *1. This asymmetry exposes Joby's own secrets. More importantly, it allows Aerosonic to build the plane as it is flying it, molding the prosecution of its lawsuit to fit the discovery that it receives from Joby. This is precisely the outcome courts in this Circuit seek to avoid by delaying this

7

discovery until the plaintiff states its alleged trade secrets with particularity. *See DeRubeis*, 244 F.R.D. at 680-81.

In the interest of justice, this Court should grant Joby a protective order against discovery of information related to Aerosonic's alleged trade secrets until such time as Aerosonic articulates them with sufficient particularity.

> **B.      Joby should not have to provide information related to Aerosonic's alleged trade secrets until this Court rules on Joby's motions to transfer and dismiss.**

This Court should delay discovery of Joby's information related to Aerosonic's alleged trade secrets for a separate reason: If this Court grants Joby's motion to dismiss or motion to transfer, it would eliminate the need for this discovery entirely in this Court. *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) (staying discovery pending resolution of a pending motion to dismiss because granting the motion would "entirely eliminate the need for such discovery").

The motion to dismiss challenges the sufficiency of each claim in Aerosonic's complaint. Thus, a ruling on the motion to dismiss even partially favoring Joby will resolve a significant portion of the substantive issues in the case. *See Huang v. TriNet HR III, Inc.*, No. 8:20-cv-2293, 2021 WL 8442618, at *1 (M.D. Fla. Sept. 30, 2021) (Covington, J.) ("It may be entirely appropriate for a Court to stay discovery where there is a dispositive motion pending because if the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided."); *see also Lee v. Apogee Med. Mgmt., Inc.*, No. 7:22-cv-32, 2022 WL 3703182, at *1 (M.D. Ga. Apr. 25, 2022) (granting motion to

stay discovery because "even if the Court does not grant AMM's motion [to dismiss] in its entirety, the elimination of any of Plaintiff's claims will narrow the scope of discovery"); *Boger v. Jaffe*, No. 2:19-cv-275, 2024 WL 3952283, at *1 (M.D. Fla. Aug. 26, 2024) (granting stay where there is a "real possibility that, at the very least, a significant portion of the claims may be dismissed—which will further narrow the scope of discovery"); *Taylor v. Service Corp. Int'l*, No. 20-civ-60709, 2020 WL 6118779, at *3 (S.D. Fla. Oct. 16, 2020) (a stay pending a motion to dismiss is appropriate when "its resolution will potentially narrow the scope of discovery in a case of this complexity and size"); *Capsa Sols. LLC v. Simplifi Med., LLC*, No. 1:22-cv-05527 (N.D. Ill. Jan. 30, 2023) ("The ruling on the motion to dismiss may narrow the claims and focus the issues, which could help make discovery mover cost effective than it would be now.").

A protective order against discovery of information related to Aerosonic's alleged trade secrets is appropriate here because the motion to dismiss will likely resolve significant issues in the case. Discovery related to Aerosonic's alleged trade secrets is inclined to be particularly fact- and expert-intensive; if this Court even partially dismisses Aerosonic's misappropriation claim, a protective order that would delay discovery of those issues pending narrowing of those issues is appropriate.

This is doubly true because there is also another pending motion that will greatly affect the case's future before this Court. If Joby prevails on its motion to transfer, this Court will no longer exercise its jurisdiction over the case—and will no longer be responsible for overseeing the staging of discovery in this case. That staging includes

under what circumstances Joby would have to disclose information related to Aerosonic's alleged trade secrets. In the Northern District of California, Joby is not required to disclose information related to Aerosonic's trade secrets until Aerosonic discloses them with reasonable particularity. *See HotSpot Therapeutics*, 2023 WL 3259471, at *6; *Quintara Biosciences, Inc. v. Ruifeng Biztech Inc.*, No. C 20-04808 WHA, 2021 WL 965349, at *1–2 (N.D. Cal. Mar. 13, 2021) (sequencing discovery by requiring identification of trade secrets before discovery is most effective for case management). If this case is transferred, a protective order against disclosure of this information would also preserve Joby's legal interests and best respect comity between the courts.

## II.   This Court Should Grant a Modest Delay of Disclosure of Information Related to Items Purchased From Aerosonic.

The protective order should also shield from discovery information related to materials and other information purchased by Joby from Aerosonic under the sales contracts until this Court rules on the pending motions and until Aerosonic identifies its trade secrets with specificity.

As the motion to dismiss discusses in further detail, Aerosonic claims that Joby breached the NDA by using Aerosonic's air probes (and information related to them) to develop Joby's own. Dkt. 53 at 9. But the NDA does not govern any air probes or information that Joby purchased; rather, the sales contracts resulting from Aerosonic's and Joby's exchange of terms and conditions and Aerosonic's performance of the sale of Aerosonic's air probes and information is what governs Joby's actions in this

10

dispute. *Id.* Joby cannot have breached the NDA when it does not even apply to the purchased information and air probes. As a result, Aerosonic's breach claim fails at least as to purchased information and air probes. *Id.*

Aerosonic's claim that Joby misappropriated trade secrets by reverse engineering items it had purchased from Aerosonic also fails as a matter of law. The sales contracts between Joby and Aerosonic for the purchased information allow for reverse engineering. *Id.* at 18-20. As a result, Joby is likely to prevail on its motion to dismiss this claim as well.

Given the likelihood of success of dismissal of Aerosonic's claims alleging breach and misappropriation of trade secrets related to purchased items, entry of a protective order on discovery as to those items would be efficient and appropriate, at least until this Court rules on the pending motion to dismiss. *See supra* pp. 8-10.

The protective order on purchased information and items should also be in effect until the Court rules on the pending motion to transfer. Granting the requested protective order would appropriately defer any decisions about the direction, scope, and staging of discovery as to the purchased items to the court that will eventually adjudicate the case. *See id.*

Finally, the protective order against discovery of purchased items should also extend until Aerosonic identifies its trade secrets with particularity. Aerosonic's allegations of trade misappropriation extend to these purchased items and, as a result, the reasons for requiring Aerosonic to identify its trade secrets with particularity extends to these items as well. *See supra* pp. 3-8.

**III.    Good Cause Exists to Grant a Protective Order.**

A party is entitled to a protective order on discovery when the party establishes good cause for such entry. Fed. R. Civ. P. 26(c). Good cause includes avoiding undue burden or expense and allows the Court to limit discovery or require trade secrets and other confidential information to be revealed only in a specified way. *Id.* 26(c)(1)(G). Here, good cause exists to protect Joby from the unnecessary and wide-ranging discovery requirements Aerosonic seeks to impose in this litigation.

Granting the protective order until Aerosonic identifies its trade secrets with particularity will result in efficiencies in this case. Indeed, as the Sedona Conference noted, delaying discovery until trade secrets are articulated serves the important purposes of making "litigation more efficient by, among other things, providing notice of what trade secrets the defendant is alleged to have misappropriated, . . . helping define the scope of discovery, and streamlining substantive motion practice, pretrial proceedings, and trial." *Commentary*, 22 Sedona Conf. J. at 238. Delaying discovery here until Aerosonic identifies its alleged trade secrets with particularity would serve these goals as well.

In addition, by disclosing only generalities about its alleged secrets, Aerosonic maintains the ability to alter the prosecution of its claims depending on the information that Joby provides regarding its own guesses about Aerosonic's alleged trade secrets. Once Joby produces all documents and communications related to its own air probes and their development, Aerosonic will be able craft purported trade secrets it believes are most likely to prevail in court. This greatly prejudices Joby's litigation strategy as

12

well as the long-term protection of its own trade secrets.

Delaying discovery of information related to Aerosonic's trade secrets and purchased information and items pending this Court's decision on the motion to dismiss and motion to transfer would also be optimal. It would allow the Court to alleviate the burden for the parties and the Court, as a significant portion of the discovery to follow will likely be unnecessary upon the Court's rulings. *See supra* 8-11.

Aerosonic will not be prejudiced by this short delay from staging discovery. This case is still in a relatively nascent stage. The parties recently had their Rule 26 conference and only recently propounded their first discovery requests, on June 25. No witnesses have set aside time to testify and no experts or consultants have yet been disclosed. *Id.* The parties themselves are not yet enmeshed in the costly and burdensome obligations of discovery. *Id.* A modest delay in the staging of discovery at this time will not render any work done by Aerosonic a nullity.

But Joby will suffer prejudice absent a protective order, especially in the event the Court grants Joby's motion to dismiss or to transfer. As described in the motions to dismiss and to transfer, it is unlikely that both of Aerosonic's claims substantially make it over the initial pleading hurdles. *See supra* 8-10. Requiring Joby to engage in full-blown fact- and expert-intensive discovery before this Court has made a decision on what issues will even proceed past the pleading stage will present a significant burden for Joby. In addition, because ND Cal. courts often require a plaintiff to identify purported trade secrets with particularity before discovery commences, entry of a protective order pending this Court's decision on the motion to transfer will best

13

preserve Joby's legal rights. *See, e.g., Commure, Inc. v. Canopy Works, Inc.*, No. 24-cv-02592-NW (VKD), 2025 WL 1150695, at *3 (N.D. Cal. Apr. 18, 2025).

Not only that, but because this discovery is so fact- and expert-intensive, the parties may require intervention from this Court to resolve disputes through motions practice. The best pathway forward is to proceed under a protective order that will stage discovery to ensure efficiency while minimizing delay.

## CONCLUSION

Given the pace of this Court's usual case management and the pending motions to dismiss and to transfer—either of which has the capacity to greatly reduce the live issues before this Court—Joby respectfully requests entry of a protective order against the discovery of information related to Aerosonic's trade secrets and the items Joby purchased from Aerosonic pending Aerosonic's designation of its alleged trade secrets with particularity or decisions on the  motions to dismiss and to transfer, whichever is later.

## CERTIFICATE OF CONFERRAL PURSUANT TO LOCAL RULE 3.01(g)

I hereby certify that counsel for Joby conferred with counsel for Aerosonic via telephonic conference on July 28, 2025 in an attempt to resolve this motion without the need for Court intervention. The parties were unable to agree on the relief requested.

Respectfully submitted,

*/s/ Mark Thomas Smith*
Paul Thanasides                              Naveen Modi, *PHV forthcoming*

14

Florida Bar No. 103039
paul@mcintyrefirm.com
clservice@mcintyrefirm.com
McIntyre

Rob Unikel
Mark Thomas Smith
Paul Hastings
Chicago, IL
robertunikel@paulhastings.com
marksmith@paulhastings.com

Jeff Pade
Paul Hastings
Washington, D.C.
naveenmodi@paulhastings.com
jeffpade@paulhastings.com

*Counsel for Defendant*
Joby Aero, Inc.

**Certificate of Service omitted pursuant to Rule 5(d)(1)(B).**

15