**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| AEROSONIC LLC, | CASE NO. 8:25-CV-00554-VMC-AAS |
| Plaintiff, | |
| v. | **AEROSONIC LLC'S OPPOSITION TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER** |
| JOBY AERO, INC., | |
| Defendant. | |

Plaintiff Aerosonic LLC ("Aerosonic") files this Opposition to Defendant Joby Aero, Inc.'s ("Joby") Motion for Protective Order Regarding the Sequencing of Discovery (Dkt. No. 58, "Motion").

## I.  INTRODUCTION

Joby is desperate to delay this case.  Mere days before Joby was supposed to respond to Aerosonic's discovery requests (and after Aerosonic agreed to Joby's request for an extension), Joby filed this Motion seeking protection from the discovery requests Aerosonic served over a month ago.  Now, Joby is acting as if a stay has already been granted.  Joby has not produced a single document in discovery and says this pending Motion justifies its conduct.  Joby's refusal to participate in discovery and continued delay tactics substantially prejudice Aerosonic's ability to litigate this dispute, and Joby presents no "good cause" for further delay.

Joby based its requested relief on the pendency of motions to dismiss and transfer that have no merit and are not case dispositive.  Indeed, one of those motions—Joby's motion to transfer—has since been denied.  Accordingly,

discovery will move forward *in this forum* on Aerosonic's claims.  Delaying that course serves only to prejudice Aerosonic and undermine the efficient and timely resolution of this dispute.  Moreover, Joby's Motion asks this Court to grant relief it *already rejected*: discovery staging based on trade secret identification.  Joby offers no reason to revisit the Court's decision.  And in any event, Aerosonic's trade secret identification in its First Amended Complaint (which Joby did not challenge) is more than sufficient to put Joby on notice of Aerosonic's claims and the scope of discovery in this case.  There is no proper basis to delay the normal progress of this discovery.  Joby's Motion should be denied.

## II.    **LEGAL STANDARD**

"[T]he pendency of a motion to dismiss or a motion for summary judgment will not justify a unilateral motion to stay discovery pending resolution of the dispositive motion." *Colceriu v. Barbary*, No. 8:20-CV-01425, 2021 WL 848155, at *1 (M.D. Fla. Mar. 5, 2021) (Mag. J. Sansone) (quoting Middle District Discovery (2021) at § I.E.4.).  Accordingly, "**such motions for stay are rarely granted**." *Id.* (emphasis added) (quoting Middle District Discovery (2021) at § I.E.4.).  In deciding a defendant's request for a stay of discovery pending a ruling on a dispositive motion, "it is necessary for the court to 'take a preliminary peek' at the merits of the [dispositive motion] to see if it appears to be clearly meritorious and truly case dispositive." *Id.* (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652–53 (M.D. Fla. 1997)).  "When evaluating whether a motion to dismiss is 'clearly meritorious,' courts consider whether 'any binding Eleventh Circuit authority'

clearly requires dismissal of the claims." *Id.* (quoting *Meyer v. Diversified Consultants, Inc.*, No. 3:14-CV-00393, 2014 WL 5471114, at *2 (M.D. Fla. Oct. 29, 2014)). Courts have described this standard as "stringent." *Abramson v. Fed. Ins. Co.*, No. 8:19-CV-02523, 2020 WL 886471, at *1 (M.D. Fla. Feb. 24, 2020) (Mag. J. Sansone).

The party seeking a protective order bears the burden of showing good cause. *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001). That burden is met upon a showing that "specific prejudice or harm will result if no protective order is granted." *Hodge v. Tide Tamer Indus., Inc.*, No. 4:19-CV-00575, 2020 WL 7634228, at *1 (N.D. Fla. Mar. 16, 2020). Determining if good cause has been shown requires the court to balance the parties' competing interests. *E.g.*, *Chicago Trib.*, 263 F.3d at 1313; *Hodge*, 2020 WL 7634228, at *1.

## III.   ARGUMENT

### A.   JOBY FAILS TO MEET THE "STRINGENT" STANDARDS TO STAY DISCOVERY

Motions for stay pending a motion to dismiss or transfer "are rarely granted," and for good reason. *Colceriu*, 2021 WL 848155, at *1 (quoting Middle District Discovery (2021) § I.E.4.). "The Court has an independent obligation to move its cases forward to resolution as expeditiously as possible," and "[s]taying . . . proceedings while the Court rules on [defendant]'s Motion to Dismiss, Transfer, or Stay does not serve that goal." *Glasgo v. Uber Techs., Inc.*, No. 8:19-CV-00097, 2019 WL 8060043, at *1 (M.D. Fla. Mar. 25, 2019)

(Covington, J.); *Cuhaci v. Kouri Grp., LP*, 540 F. Supp. 3d 1184, 1186 (S.D. Fla. 2021) ("Motions to stay discovery 'are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems.'" (quoting *Feldman*, 176 F.R.D. at 652)).

As a threshold matter, this Court denied Joby's motion to transfer. Dkt. No. 60. That motion cannot provide any basis to stay discovery. Joby must now rely solely on its motion to dismiss, which cannot warrant a stay unless it is "clearly meritorious and truly case dispositive" and that "'binding Eleventh Circuit authority' clearly requires dismissal of the claims." *Colceriu*, 2021 WL 848155, at *1 (first quoting *Feldman*, 176 F.R.D. at 652–53; and then quoting *Meyer*, 2014 WL 5471114, at *2). Joby's motion does not clear this bar, and Joby is not entitled to a stay pending its disposition.

### 1.     Joby's Motion to Dismiss Is Neither "Clearly Meritorious" Nor "Truly Case Dispositive"

Joby's motion to dismiss satisfies neither of the stringent standards necessary to stay discovery. *Colceriu*, 2021 WL 848155, at *1; *Wiand v. ATC Brokers Ltd.*, No. 8:21-CV-01317, 2022 WL 1239373, at *2 (M.D. Fla. Apr. 27, 2022). Aerosonic will not belabor the points from its opposition to Joby's motion to dismiss, which illustrate that Aerosonic has more than satisfied its minimal pleading burden to plausibly allege Joby's misappropriation and breach of the MNDA. Dkt. No. 56 (Aerosonic's Opposition to Joby's Motion to Dismiss). But suffice to say, Joby's motion to dismiss cites no binding Eleventh Circuit authority

that clearly requires dismissal of Aerosonic's claims.  *See Colceriu*, 2021 WL 848155, at \*1; *Feldman*, 176 F.R.D. at 652–53; *Meyer*, 2014 WL 5471114, at \*2. Indeed, Joby's motion to dismiss cites only *two* cases from the Eleventh Circuit Court of Appeals, each for general propositions that do not address the sufficiency of Aerosonic's claims.  *See* Dkt. No. 53, Joby's Motion to Dismiss at 8 (citing *Chaparro v. Carnival Corp*, 693 F.3d 1333, 1337 (11th Cir. 2012)); *id.* at 11 (citing *Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1317 (11th Cir. 2013)).

Nor can Joby contend that its motion to dismiss is "clearly meritorious" with respect to the probes Joby purchased from Aerosonic.  Motion at 10–11.  *Three agreements* expressly prohibit Joby from reverse engineering those probes.  Dkt. No. 56 at 10–14.  Joby only argues otherwise by introducing a convoluted, incorrect "battle of the forms" analysis, improper to resolve at the pleading stage, to twist the parties' agreements to say Joby wants, instead of what they actually state.  Dkt. No. 56 at 12–14.  Joby's motion to dismiss has none of the hallmarks of a clearly meritorious motion.  *See Montoya v. PNC Bank, N.A.*, No. 1:14-CV-20474, 2014 WL 2807617, at \*2 (S.D. Fla. June 20, 2014) (rejecting stay where the court's "preliminary review suggests that the motions may not be the 'slam-dunk' submissions the Defendants describe them to be").

Joby's motion to dismiss is also not "truly case dispositive."  While Joby nominally challenges Aerosonic's First Amended Complaint ("FAC") as a whole, the majority of Joby's motion to dismiss focuses on only a limited subset of trade secret information at issue in this case: the ten probes Joby purchased from

Aerosonic. Dkt. No. 53 at 8–11, 18–20, 24. But the scope of Aerosonic's allegations goes far beyond those probes, and encompasses numerous other trade secrets contained in disclosures made separately to Joby. *See, e.g.*, Dkt. No. 45 (Aerosonic's First Amended Complaint) at ¶¶ 42, 60–67, 76–77, 94, 167. Accordingly, even if Joby could succeed on its arguments regarding the purchased probes (which it cannot), this case will continue as to the myriad of other trade secrets Joby acquired and misappropriated. *See Sprint Sols., Inc. v. Cell Xchange, Inc.*, 8:14-CV-00233, 2014 WL 4947819, at *2–3 (M.D. Fla. Oct. 1, 2014) (denying discovery stay when it is unclear whether motion to dismiss will dispose of the entire case).

Regardless, Aerosonic's opposition to Joby's motion to dismiss asks the Court to alternatively grant Aerosonic leave to amend any pleading deficiencies. Dkt. No. 56 at 20; *Colceriu*, 2021 WL 848155, at *1 (denying motion to stay where "the plaintiff states she will request leave to amend any pleading deficiencies"). Joby's motion to dismiss does not present any challenges to this Court's jurisdiction that would render such pleading amendments futile. Joby's motion to dismiss is therefore unlikely to be case dispositive even if successful, and Joby cannot satisfy this "stringent" standard. *Wiand*, 2022 WL 1239373, at *2 (denying motion to stay where "the court cannot conclude at this time that the motions to dismiss will be granted and, even if so, whether such dismissal would be of the entire amended complaint, against each defendant, and with prejudice").

### 2.  Joby Fails to Identify Any Prejudice Outweighing Aerosonic's

Joby does not identify any legitimate prejudice from engaging in discovery under the normal course.  All Joby does is vaguely state the burden inherent in all litigation, equally applicable to all litigants.  Joby argues "[r]equiring Joby to engage in full-blown fact- and expert discovery . . . will present a significant burden for Joby."  Motion at 13.  Joby does not explain what that "burden" is, or how it is different than any other litigant's burden in participating in discovery (including Aerosonic's).  Absent any specific prejudice that outweighs Aerosonic's, Joby is not entitled to a stay.

The only specific "prejudice" Joby attempts to articulate is "prejudice[ ] [to] Joby's litigation strategy as well as the long-term protection of its own trade secrets."  Motion at 12–13.  Joby cites no authority suggesting vague, undefined prejudice to its "litigation strategy" suffices to delay discovery.  Moreover, any purported prejudice to Joby's trade secrets is minimal because Aerosonic is not a direct competitor, and otherwise remedied by a confidentiality and protective order.[1]

Conversely, Aerosonic faces substantial prejudice if discovery is stayed.  Joby is wrong that this case is "in a relatively nascent stage."  Motion at 13.  Almost six months have passed since Aerosonic filed this lawsuit.  Trial is only a year away.

---

[1] Aerosonic has been trying to negotiate a confidentiality agreement with Joby for over a month.  Joby's resistance is unsurprising, given that Joby likely knows once a confidentiality agreement is place, it has no grounds to object to discovery on the basis of protecting its trade secrets.

Expert reports are due only a few months away on January 23, 2026. Those expert reports necessitate completing fact discovery, including depositions, within a reasonable amount of time for the parties to prepare those expert reports based on information produced in fact discovery. Joby was supposed to produce documents in response to Aerosonic's discovery requests on August 1, 2025. Instead, Joby produced nothing, filed this Motion, and seeks to delay discovery even longer. Given Joby's request for an *additional thirty days* after all of these issues are resolved, Motion at 1 n.1, Aerosonic may not see a document produced by Joby until October or later. This is untenable. Accordingly, Joby's proposed stay would prejudice Aerosonic's ability and time to prepare its expert reports and litigate this case under the Court's schedule.

Moreover, this is a trade secret misappropriation case. The longer Joby delays, the higher risk that the perpetrators of misappropriation within Joby could alter or destroy evidence showing misuse of Aerosonic's trade secrets. Indeed, Aerosonic alleges that Joby has already engaged in editing publicly-available videos to conceal the evidence of its misappropriation. Dkt. No. 45 at ¶ 142. Accordingly, the substantial disruption of this Court's Case Management and Scheduling Order coupled with the risk of losing valuable evidence constitute prejudice to Aerosonic that Joby's Motion has not outweighed. *See Colceriu*, 2021 WL 848155, at *2 (denying stay where "[t]he possible burden imposed on the defendants in responding to discovery is outweighed by the potential[ ] prejudice to the plaintiff if evidence is destroyed").

### B.    JOBY'S REQUEST FOR DISCOVERY STAGING IS INAPPROPRIATE AND UNWARRANTED

#### 1.    This Court Already Rejected Joby's Request for Discovery Staging

Joby continues to waste judicial resources and delay this case by seeking relief the Court already rejected. Joby made the same request for discovery staging in its case management submission on May 27, 2025. Dkt. No. 36 at § 3. This Court rejected it. *See* Dkt. No. 37. Specifically, Joby requested that the Court require "Aerosonic to specifically identify the trade secrets at issue" before discovery. Dkt. No. 36 at § 7. Aerosonic set forth its position that parties should participate in the normal discovery process, disputes can be resolved among the parties, and that "Joby is well aware of the details and documentation of the confidential disclosures made by Aerosonic to Joby." Dkt. No. 36 at § 7. The Court agreed with Aerosonic, and declined to order any further trade secret identification in advance of discovery. Dkt. No. 37. The Court's prior decision alone is dispositive of Joby's Motion.

#### 2.    Discovery Staging Is Not Appropriate in This Case

As a threshold matter, this Circuit has not concluded (and Aerosonic does not concede) that discovery staging is applicable to federal DTSA claims. *US Thrillrides, LLC v. Intamin Amusement Rides Int. Corp. Est.*, No. 6:22-CV-02338, 2023 WL 11693750, at *1 n.1 (M.D. Fla. Dec. 12, 2023) ("[T]he Court remains skeptical that state common law in this context creates a procedural prerequisite to engaging in discovery in federal court pursuant to the Federal Rules of Civil Procedure."). Indeed, the court in *DeRubeis v. Witten Technologies, Inc.*, (which

Joby relies on) noted at least nine defensible approaches to discovery in state-law trade secret cases to balance competing policy concerns.  244 F.R.D. 676, 681 (N.D. Ga. 2007).  In any event, those competing policy concerns weigh against staging discovery in this case.

Specifically, Joby's requested discovery staging places Aerosonic in the "difficult" position of "[s]atisfying the requirement of detailed disclosure of the trade secrets without knowledge [of] what the defendant is doing[.]"  *Id.*  at 680 (second alteration in original) (quoting Kevin R. Casey, *Identification of Trade Secrets During Discovery: Timing and Specificity*, 24 AIPLA Q.J. 191, 195 (1996)).  Indeed, if Aerosonic's trade secret description "is too general," it could "encompass material that the defendant will be able to show cannot be trade secret," but if it "is too specific, it may miss what [Joby] is doing." *See id.*  (quoting Casey, *supra*, at 195).  Likewise, Aerosonic "may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating." *Id.*

Conversely, the discovery burden on Joby's air data probes is not the "fishing expedition[ ]" Joby insists.  Motion at 4.  Aerosonic is not a direct competitor of Joby, so concerns about efforts "to discover the trade secrets of a competitor" are inapplicable. *See DeRubeis*, 244 F.R.D. at 680.  Moreover, Aerosonic's discovery requests are reasonably limited to information regarding Joby's alleged misuse of Aerosonic's air data probe technology.  Motion at 7.  Joby's air data probes are at the heart of this dispute, and Joby cannot contend that discovery related to its

probes is irrelevant, regardless of how Aerosonic's trade secrets are ultimately identified. In discovery, Aerosonic is entitled to discovery related to Joby's air data probes. It makes little sense to delay that discovery by months (or longer) now. Accordingly, none of the policy considerations support the type of discovery staging Joby requests.

Finally, this Court's dismissal of Joby's motion to transfer means Joby cannot contend that "this Court . . . will no longer be responsible for overseeing the staging of discovery in this case" or that discovery staging should proceed based on rules "[i]n the Northern District of California." Motion at 9–10. A stay cannot be necessary to "preserve Joby's legal rights" based on what "ND Cal. Courts often require[.]" Motion at 13–14.

### 3. Aerosonic Has Already Identified Its Trade Secrets with Reasonable Particularity

Aerosonic's First Amended Complaint specifically and sufficiently details Aerosonic's trade secrets. In paragraphs 35 through 40 of the FAC (Dkt. No. 45), Aerosonic describes its trade secrets, including specifically identifying each and every component of Aerosonic's air data probes that have trade secret dimensions, tolerances, and aerodynamic ratios. *See, e.g.*, Dkt. No. 45 at ¶¶ 36–37 (identifying dimensions, tolerances, and aerodynamic ratios for AoA ports, AoS ports, probe sleeve diameter, static port axial location, probe height, pitot port size, mast maximum thickness, probe tip and static hole ring, mast leading edge, pitot inlet diameter, etc.). Aerosonic further identifies the designs of specific components of its air data probes that constitute trade secrets, including the internal geometry of

the pitot chamber and the geometric design of the interface side.  Dkt. No. 45 at ¶¶ 38–39.  Additionally, Aerosonic identifies its trade secret procedures and reports: Acceptance Test Procedures, Qualification Test Procedures, Qualification Test Reports, First Article Inspection Reports, and wind tunnel data for its probes. Dkt. No. 45 at ¶ 40.  Joby cannot contend that Aerosonic has not put Joby on notice of the information over which Aerosonic claims trade secret protection.  *See Jabil Inc. v. Essentium, Inc.*, No. 8:19-CV-01567, 2020 WL 708140, at *4 (M.D. Fla. Feb. 12, 2020) (finding trade secret identification sufficient where plaintiff "identified a list of file names and file paths" for the files that it "contends are trade secrets that were misappropriated by Defendants").

Aerosonic's FAC further describes the details of how, when, and where Joby acquired Aerosonic's trade secrets.  In paragraphs 42 through 45, Aerosonic describes by specific name and title the documents and materials which contain those trade secrets, and which Joby received.  Paragraphs 46 through 51 explain why that information is trade secret, including the reasons that information is valuable to Aerosonic by not being known.  Paragraphs 54 through 108 detail the course of dealing between Aerosonic and Joby, and identify specifically where and when Aerosonic disclosed those materials to Joby.  For example, Aerosonic identifies the dates and recipients of disclosures of engineering drawings containing Aerosonic's trade secrets, and again describes the specific titles of documents containing Aerosonic's trade secrets disclosed to Joby after the Clearwater meeting.  *See, e.g.,* Dkt. No. 45 at ¶ 76 (identifying "Acceptance Test

Procedures, Acceptance Test Reports, Qualification Test Procedures, Qualification Test Reports, First Article Inspection Reports, 3D models, 2D drawings, and wind tunnel data"). Given Aerosonic's detailed description of the what, who, where, when, and how of its trade secret disclosures, Joby cannot reasonably contend that it is not on notice of Aerosonic's claims or the scope of discovery in this case.

Tellingly, Joby *never challenged* Aerosonic's identification of its trade secrets in its motion to dismiss. Joby did not contend that Aerosonic's detailed trade secrets descriptions in Aerosonic's FAC were vague or did not put Joby on notice of the information at issue in this case. Joby raises this argument for the first time now to strategically delay discovery.

Regardless, other courts have found less detailed trade secret descriptions more than sufficient to proceed to discovery. For example, the court in *FlexSteel Pipeline Techs., Inc. v. Chen* held that plaintiff's trade secret descriptions in its amended complaint were sufficiently identified to move to discovery. No. 5:16-CV-00239, 2017 WL 11672823, at *2 (N.D. Fla. Nov. 30, 2017). The plaintiff in that case alleged that its product "is a revolutionary spooled pipe technology utilizing a series of helically-wound steel strips with other layers to provide a unique combination of strength, flexibility and other key performance characteristics." *Id*. The plaintiff further alleged that its product designs "include[ ] . . . polymer layers, wire web layers, helically-wound reinforcement layers (including versions with gaps and versions with locking tabs), anti-extrusion layers and sheath layers,' and these designs are confidential trade secrets." *Id*. (alterations in original). Finally,

plaintiff asserted that a specific patent "embod[ied]" its product designs and "comprised [plaintiff's] trade secrets that Defendants misappropriated." *Id.* The court held that these disclosures "are more than sufficient to identify what [plaintiff] alleges [defendant] misappropriated" and "is sufficient to place [defendant] on notice of the nature of [plaintiff's] claims and is more than sufficient to allow [defendant] to discern the relevancy of any requested discovery on its own trade secrets." *Id.* at *3.

Here, Aerosonic points to even more detailed components of its air data probes and identifies the specific documents that it disclosed to Joby embodying those trade secrets. Dkt. No. 45 at ¶¶ 35–40. Joby does not explain why it needs, for example, the specific numerical values of Aerosonic's dimensions and tolerances to understand the relevancy of Aerosonic's claims or discovery requests, particularly where Joby possesses the engineering drawings and other documents containing those values. Motion at 6–7. This is not the case where trade secret identification amounted to "essentially a source code dump" of "1,630 source code files . . . [where] the Court has no idea where Plaintiff's trade secrets are supposed to be or what they are supposed to look like." *RoadSync, Inc. v. Relay Payments, Inc.*, No. 1:21-CV-03420, 2023 WL 9692398, at *2 (N.D. Ga. May 19, 2023). Aerosonic's descriptions of its trade secrets are more than sufficient to define a reasonable scope of discovery. *See Arthrex, Inc. v. Parcus Med.*, LLC, No. 2:10-CV-00151, 2010 WL 11622727, at *2 (M.D. Fla. Dec. 16, 2010) (finding sufficient trade secrets described as "customer information, cost information, volume

information, profit information, market strategies, marketing and sales information, manufacturing techniques, and distributor information" that defendant used "to develop a knock-off product line").

### 4. Joby Is Actively Obstructing Aerosonic from Further Identifying Its Trade Secrets

Joby's unreasonable delay in negotiating a confidentiality and protective order is a purposeful effort to further put off its discovery obligations. To the extent required, Aerosonic cannot further identify its trade secrets absent a confidentiality or protective order. Yet Joby continues to unreasonably and knowingly obstruct that process. It has now been four weeks since Aerosonic provided an initial draft confidentiality agreement for Joby's review, and Joby still has not agreed despite Aerosonic's early and repeated statements emphasizing the necessity for a confidentiality agreement to respond to discovery. Joby further refused Aerosonic's offer for an interim "outside counsel only" treatment of documents so that the parties could move forward and respond to discovery while Joby continued to review Aerosonic's proposal. Now the extended deadline for Joby's discovery responses has passed, and Joby is still withholding consent to Aerosonic's proposal.

### C. JOBY'S TACTICAL DELAY IS NOT GOOD CAUSE, AND PREJUDICES AEROSONIC

Joby has repeatedly delayed activities in this case, at every possible juncture. In Joby's case management submission, Joby represented that it "anticipates filing a motion to transfer on or around June 9, 2025," Dkt. No. 36 at § 3, but still did

not file that motion until July 8, 2025.  Joby further represented that "it cannot mount a defense until it knows with some certainty which trade secrets were allegedly misappropriated," Dkt. No. 36 at § 7, but the Court rejected that position.  Dkt. No. 37.  Now, over two months after that submission, Joby seeks a stay of discovery based on those same grounds.  Motion at I.A (trade secret identification); *id*. at I.B (motion to transfer).  Joby offers no explanation why it could not bring its Motion months ago, other than because (as discussed below) the Court previously rejected Joby's request for discovery staging in the Case Management and Scheduling Order.

Aerosonic served its first discovery requests on Joby on June 25, 2025.  Joby offers no explanation for why it waited over a month before seeking protection from these discovery requests, just days before its discovery responses came due.  *See* Middle District Discovery (2021) at § VII.A ("Upon receipt of objectionable discovery, a party has a duty to seek relief immediately, i.e., without waiting until the discovery is due or almost due. . . . [A] party's diligence in seeking relief is a principal factor in the decision whether to grant a stay.")  Joby was simply biding its time until the last possible moment for maximum delay.

In the meantime, instead of raising any issues with Aerosonic or this Court, Joby asked Aerosonic for an *extension* to respond to discovery.  Exhibit 1 (July 15, 2025 Email Correspondence).  Aerosonic assumed Joby's request was in good faith and for the purpose of allowing Joby to collect and produce relevant, responsive information.  But apparently Joby had other plans for that extension, filing this

NAI-5002308251v1                                   16

Motion instead.  When Joby served its responses and objections to Aerosonic's discovery requests, it lodged over 100 pages of objections, did not produce a single document, and did not answer a single interrogatory beyond vague, self-serving statements devoid of any substance or detail.  Exhibit 2 (Joby's Responses to Aerosonic's First Requests for Production), Exhibit 3 (Joby's Responses to Aerosonic's First Interrogatories).  Instead, Joby claims *this Motion* justifies refusing to respond to discovery, despite no stay having yet been issued.  Ex. 2, Ex. 3.  In sum, Joby leveraged Aerosonic's goodwill to request a discovery extension, then used that time instead to prepare and file this Motion.  Now, Joby is acting as if discovery is already stayed.  *See* Middle District Discovery (2021) at § VII.A ("The mere filing of a motion for a protective order does not, absent an order of the Court granting the motion, excuse the moving party from complying with the requested or scheduled discovery.").

Joby's conduct has already set back this case's progress by months and prevented meaningful progress in accordance with the purpose of the Court's Scheduling Order, which "is to discourage wasteful pretrial activities, and to secure the just, speedy, and inexpensive determination of the action."  Dkt. No. 37 at 2. Instead of timely raising issues or seeking relief, Joby sat on its hands, purposefully waiting until the last possible moment to file this Motion.

Now, Joby asks for an *additional* 30 days to respond to discovery *after* resolution of all the issues raised in its Motion.  Motion at 1 n.1.  Accordingly, even if all of the issues Joby raises were resolved to Joby's satisfaction by tomorrow,

Joby would not produce its first document in this case until September 12, 2025. That is *six months* after Aerosonic filed this lawsuit, and gives the parties only four months to complete fact discovery and depositions before expert reports are due on January 23, 2026. The Court's Case Management and Scheduling Order quickly becomes challenging, all as a result of Joby's purposeful conduct. *See Montoya*, 2014 WL 2807617, at *3 (denying stay where the parties "will need to embark on an energetic, concentrated and time-consuming discovery plan even *without* a discovery stay" and that "[i]t is therefore difficult to imagine how the parties could *ever* complete all discovery by either deadline if a discovery stay were to remain in effect for two or three months" (emphasis in original)). Joby's delay undermines any assertions of good cause, and substantially prejudices Aerosonic.

## IV.    CONCLUSION

Joby fails to satisfy the standards for a stay. Rather, Joby's actions show purposeful delay at every step. Joby has failed to demonstrate good cause for discovery staging, or a "clearly meritorious" and "truly case dispositive" motion justifying the extraordinary and wasteful remedy of a discovery stay. Instead, this Motion is another tactical delay, wasting both this Court's and Aerosonic's time and resources. Accordingly, Joby's Motion should be denied.

Respectfully submitted,                                  Dated: August 12, 2025

*/s/ Allison M. Stevenson*                               Randall E. Kay (Admitted *Pro Hac Vice*)
Troy A. Fuhrman (Bar No. 985211)          Jones Day
Allison M. Stevenson (Bar No. 126620)     4655 Executive Drive, Suite 1500
Hill Ward Henderson                               San Diego, California  92121.3134
101 E. Kennedy Boulevard, Suite 3700     Telephone:    +1.858.314.1200
Tampa, Florida 33602                              Facsimile:     +1.844.345.3178

Telephone:   +1.813.221.3900          Email:        rekay@jonesday.com
Email: troy.fuhrman@hwhlaw.com
        allison.stevenson@hwhlaw.com    *Attorneys for Plaintiff Aerosonic LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 12, 2025, I served a true and correct

copy of the foregoing document on all counsel via electronic filing with the Clerk

of the Court by using the CM/ECF system.

                                        */s/ Allison M. Stevenson*
                                        Attorney for Plaintiff Aerosonic LLC