**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

AEROSONIC LLC,

        Plaintiff,

v.                                                                Case No. 8:25-cv-554

JOBY AERO, INC.,

Defendant.

**JOBY'S REPLY IN SUPPORT OF ITS MOTION FOR
PROTECTIVE ORDER REGARDING THE SEQUENCING OF DISCOVERY**

Pursuant to this Court's August 18 Order (Dkt. 63), Joby respectfully submits this reply in support of its motion for a protective order (Dkt. 58). Joby brings to this Court's attention several incorrect factual representations made by Aerosonic in its opposition (Dkt. 61) that may materially impact this Court's analysis of Joby's motion.

First, Aerosonic accuses Joby of "actively obstructing Aerosonic from further identifying its trade secrets" through "unreasonable delay in negotiating a confidentiality and protective order." *Id*. at 15. This is untrue. At the parties' conference on May 22, 2025, Aerosonic committed to providing an initial draft of the confidentiality agreement. Ex. 1; *see also* Ex. 2. Aerosonic did not provide Joby a draft until July 14—more than seven weeks after initially agreeing to do so and three weeks after Aerosonic first served its discovery requests. *Id.* That draft was deficient in several respects, including, for example, that it did not address how to designate materials subject to U.S. export control regulations (even though both parties have technical

documents that are export controlled), designations outside of discovery (like correspondence), its impact on prior agreements between the parties, and if any in-house counsel could review and make informed decisions based on materials designated under the highest tier of confidentiality. *Id.*

To resolve some of the open issues, the parties then engaged in a series of email exchanges—including over weekends—on July 21, July 25, July 29, July 30, August 1, August 3, August 4, and August 5. *See* Ex. 1, Ex. 2, Ex. 3. In one exchange on August 1, Joby informed Aerosonic that it was line-editing the draft provided and would exchange revisions. Ex. 1. On August 5, Joby followed up, providing Aerosonic with line edits, which were extensive and time-consuming in light of the many open issues and deficiencies in the original draft. Ex. 3. Aerosonic responded on August 8 with additional proposed edits and suggesting a new provision. *Id.* The parties met and conferred over remaining issues on August 12, reaching further consensus, and where Aerosonic agreed to provide an updated draft. Ex. 4. On August 14 Aerosonic provided an updated draft, and the parties have continued to exchange emails on August 15, 18, and 19, with Aerosonic proposing a new provision on August 19 (yesterday). Ex. 5, Ex. 6.

To be clear, it is *Aerosonic* that delayed negotiation of the confidentiality order by sitting on it for nearly two months—after having volunteered to do so as plaintiff.[1]

---

[1] Aerosonic refers to a proposal to proceed under an interim confidentiality agreement. Dkt. 61 at 15. The first time Aerosonic raised this possibility was on August

Since Aerosonic provided a draft, Joby has spent significant time diligently negotiating its terms, despite the fact that the initial draft was left wanting in significant ways.[2] To say that Joby's motion is predicated on an attempt to delay entry of a confidentiality agreement and that it is Joby that has somehow tied Aerosonic's hands behind its back and prevented it from identifying its trade secrets with particularity is fiction.[3]

Second, Aerosonic argues that Joby's motion for a protective order is nothing more than a clumsy effort to delay the case. Dkt. 61 at 1. Specifically, Aerosonic claims that Joby "refused to participate in discovery," "acting as if a stay has already been granted" and is using "this pending motion [to] justif[y] its conduct." *Id.* This is false. In fact, on August 12, and before Aerosonic filed its opposition brief, Joby participated in a 90-minute conference in which Joby agreed to search for and produce, among

---

4. Ex. 2. Joby declined because such temporary fixes often contradict the final governing language, resulting in logistical issues and confusion later in the litigation. *Id.* Moreover, because the parties were making substantial progress, Joby was confident that the outstanding issues would be resolved soon. *Id.*

[2]    No party disputes that discovery will encompass highly technical materials that each side will claim as trade secrets. For Joby's part, absent confidentiality protections, it cannot respond to discovery that will reveal its trade secrets.

[3]    This is part and parcel of Aerosonic's tendency in this case to sit on its priorities and then demand that Joby respond immediately and acquiesce to all of Aerosonic's demands. For example, just yesterday, Aerosonic transmitted for the first time a draft ESI protocol to govern the vast majority of documents in this case—months after the parties negotiated the joint case management report, after the parties exchanged their initial discovery requests and weeks after the parties exchanged their responses and objections. Ex. 7. In that transmission, Aerosonic's counsel asked that Joby review the protocol and be ready to provide feedback on it within 24 hours at the conference scheduled for the next day. *Id.* Aerosonic's complaint that Joby refuses to produce documents (*see infra*) rings hollow when, according to Aerosonic itself, no protocol for any such production is in place.

3

other things, documents sufficient to show the design and development of the Joby air data probe. Ex. 4. Contrary to Aerosonic's representation to this Court, Joby explicitly stated that it was not withholding documents on the basis of its pending motions for a protective order or to dismiss, but included reference to those pending motions only to preserve its rights. *Id.* And the parties continued to engage in productive negotiations about both parties' objections to the other's document requests in another 90-minute conference today. That is a far cry from a refusal to participate in discovery and using the pending motion as justification to avoid discovery obligations. To be clear, Joby's motion is premised on resolution of the motion to dismiss and identification of Aerosonic's alleged trade secrets streamlining the parties' discovery obligations, conserving resources, and best informing the parties about what is or is not responsive and relevant to Aerosonic's claims—nothing more. Dkt. 58.

Third, it has become even more apparent that Aerosonic's strategy is to demand every document in Joby's possession related to its air probes and then decide what its own trade secrets are. During the August 12 conference, Aerosonic took the position that Joby must produce all documents related to Joby's air data probe, including all drawings, design documents, development documents, calibration files, and documents related to testing, qualification, improvement, and manufacturing of Joby's air data probes. Ex. 4. Aerosonic could not articulate a good-faith basis to seek these documents based on its allegations that are premised on breach of an inapplicable contract (a subject of the pending motion to dismiss). *Id.* And today, when pressed, Aerosonic continued to stand by its position that it is entitled to the same limitless

discovery it insisted on in the August 12 conference. This is the exact kind of fishing expedition federal courts prohibit parties from engaging in. Dkt. 58 at 3-8. Aerosonic's positions during the parties' conferences only underscore Joby's need for entry of a protective order: Aerosonic must first identify its purported trade secrets so the parties can work through a rational scope of discovery. Aerosonic cannot be permitted to build this plane while flying it.

Joby respectfully requests entry of a protective order against the discovery of information related to Aerosonic's trade secrets and the items Joby purchased from Aerosonic pending Aerosonic's designation of its alleged trade secrets with particularity and a decision on the motion to dismiss.

Respectfully submitted,

/s/ Mark Thomas Smith
Paul Thanasides
Florida Bar No. 103039
paul@mcintyrefirm.com
clservice@mcintyrefirm.com
McIntyre

Rob Unikel
Mark Thomas Smith
Paul Hastings
Chicago, IL
robertunikel@paulhastings.com
marksmith@paulhastings.com

Naveen Modi, *PHV forthcoming*
Jeff Pade
Paul Hastings
Washington, D.C.
naveenmodi@paulhastings.com
jeffpade@paulhastings.com

**Counsel for Defendant**
Joby Aero, Inc.

**Certificate of Service omitted pursuant to Rule 5(d)(1)(B).**

5