UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AEROSONIC LLC,

      Plaintiff,

v.                                                                  Case No. 8:25-cv-554-VMC-AAS

JOBY AERO, INC.,

      Defendant.

_____/

## ORDER

Plaintiff Aerosonic LLC (Aerosonic) moves for leave to amend the identification of its trade secrets to include a supplemental trade secret. (Doc. 180).[1] Defendant Joby Aero, Inc., (Joby) responded in opposition. (Doc. 218).[2]

## I.    Background

Joby and Aerosonic both accuse the other of improper delay. Aerosonic contends Joby impermissibly failed to disclose a CT scan of an Aerosonic air probe. Consequently, Aerosonic argues had Joby timely produced the documents revealing a CT scan or identified the CT scan in response to an Interrogatory before the deadline to amend the trade secret list expired, then

---

[1] To maximize public access, a redacted version of the motion for leave to amend trade secrets is filed on the public docket at Doc. 184.

[2] To maximize public access, a redacted version of the response in opposition to the motion to amend trade secrets is filed on the public docket at Doc. 228.

Aerosonic would have included the additional trade secret. (Doc. 180, pp. 15−16). Joby contends Aerosonic impermissibly waited six months since its initial trade secret identification to bring this motion. (Doc. 218, p. 2). Joby contributes the allegedly delayed disclosure to Aerosonic's delays in agreeing to a confidentiality agreement, providing the active trade secret identification, fixing the deficiencies in the trade secret identification, and negotiating an ESI protocol. *See* (*Id.* at 18). Joby states it then had to collect and review more than 400,000 documents before timely producing about 140,000 responsive documents. *Id.*

The court held two discovery hearings; the first on December 16, 2025 and the second on January 14, 2026. At the first hearing the court addressed issues related to the trade secret list. After hearing argument and Aerosonic's representation that the trade secret list would be final, the court granted Aerosonic leave to expand the trade secret list. (Doc. 136). In doing so, the court stated permission to further amend the trade secret list would require a showing of "exceptional circumstances of why it is that this wasn't able to be identified back in October."[3] (Docs. 136, p. 2, 140, p. 24). At the second hearing

---

[3] On September 15, 2025, Aerosonic served the original trade secret list on Joby. That list identified ten trade secrets. Joby argued the trade secret list was deficient. On October 24, 2025, six months into discovery, Aerosonic amended its trade secret list to include 50 alleged trade secrets. (Doc. 218, p. 10).

the court set the document production deadline as February 6, 2026. (Doc. 146).

Aerosonic contends exceptional circumstances exist to allow Aerosonic to amend its trade secret list to add one additional trade secret. Aerosonic alleges the exceptional circumstances are that Joby's late document production revealed Joby, through a third-party, conducted CT scans to reverse engineer the internal configuration of the air data probe. Aerosonic states it learned of this scan for the first time during the February 10, 2026, deposition of Kevin O'Connor. (Doc. 180, p. 10). Aerosonic asserts that, under the Federal Rules, Joby should have amended or supplemented its discovery answers to reflect Joby's alleged reverse engineering efforts.

After discovering the CT scan evidence through the deposition, Aerosonic "conducted a targeted search of Joby's voluminous productions" and found "[b]uried within Joby's January 30, 2026 production" documents revealing Joby sent an Aerosonic probe to a third party to be CT scanned. (Doc. 180, p. 10). Through subsequent productions by Joby on February 6 and 7, Aerosonic discovered Slack communications between Joby employees discussing the results of the CT scan. Aerosonic contends the scan, and subsequent Slack communications, reveal Joby deliberately used the CT scan of Aerosonic's air data probe to develop Joby's own in-house air data probe.

Aerosonic claims if Joby "followed the federal rules and timely disclosed

3

its reverse engineering efforts, this motion would be unnecessary." (Doc. 180, p. 5). Now Aerosonic argues this situation is the type of "exceptional circumstance" the court contemplated to permit leave to amend its trade secret list to include the alleged trade secrets discovered through the CT scan.

Joby counters these are inappropriate circumstances to grant leave for Aerosonic to amend its trade secret list. Joby argues the evidence of Joby's CT scan does not justify adding an entirely new trade secret so far into the case. (Doc. 218, p. 9). Joby also argues its discovery responses were timely and accurate.

## II.   Analysis

"[D]istrict courts are entitled to broad discretion in managing pretrial discovery matters." *Perez v. Miami-Dade Cnty.*, 297 F.3d 1255, 1263 (11th Cir. 2002). Important factors in deciding a motion to amend the identification of trade secrets include "whether the party seeking leave amend was diligent and whether the opposing party would be unduly prejudiced by amendment." The Sedona Conference, *Commentary on the Proper Identification of Asserted Trade Secrets in Misappropriation Cases*, 22 Sedona Conf. J. 223, 263 (2021). An amendment is more likely to be allowed if the proposed amendment is "based on facts that were newly learned []such as learning through discovery that a defendant misappropriated a trade secret the plaintiff previously did not

4

believe was at issue[]." *Id.; see Dura Glob. Techs., Inc. v. Magna Donnelly Corp.*, No. 2:07-CV-10945-SFC, 2011 WL 4527576 at \*9 (E.D. Mich. Sept. 29, 2011) (allowing supplementation and extending the discovery deadline where the defendant "did not know of all the alleged acts of trade secret misappropriation" and the plaintiff "learned [the defendant] extracted additional purported . . . trade secrets"). Amendments are less likely to be allowed at late stages in the litigation, if they may necessitate a delay of the trial date, or if past amendments have been allowed. *See* Sedona Conference, *Commentary on the Proper Identification of Asserted Trade Secrets in Misappropriation Cases*, at 263–64.

### a.    Exceptional Circumstances

Exceptional circumstances do not exist to grant Aerosonic leave to add an additional trade secret to the case. At the December 16, 2025, discovery conference, the court contemplated Aerosonic may later want to amend its trade secrets list. The court inquired whether "this 50 trade secret list on October 24 is the complete list now." (Doc. 140, p. 16). Aerosonic explicitly stated, "And I want to reiterate, the [trade secret] list is done. Absent something extraordinary in ESI, [like] they hacked a server or something, the list is done." (*Id.* at 19). The court permitted Aerosonic to amend its trade secret list and stated further amendments would need to show exceptional

circumstances of why an additional trade secret could not be identified back in October.

Despite the Aerosonic's unexpected discovery of the CT scan, the court finds these circumstances are not the exceptional circumstances contemplated to permit a second amendment to the trade secret list. Although Aerosonic's counsel likely only meant to use the "hacking of a server" example as a hyperbole, the court finds this example helpful in adjudicating this matter.

For example, if Aerosonic discovered for the first time through ESI discovery that Joby really did hack a server and misappropriated new alleged trade secrets (for example misappropriating engineering drawings from *unrelated* air data probes), then exceptional circumstances would be present. In this hypothetical, Aerosonic could not have known of the entirely new misappropriated trade secret until the ESI discovery and after the trade secret list was amended. *Cf. Nat'l Serv. Indus., Inc. v. Vafla Corp.*, 694 F.2d 246, 249 (11th Cir. 1982) (affirming the district court's decision to deny leave to amend the answer because "[t]here was no abuse in discretion where the facts supporting the proposed defense were known at the time of the original answer . . . and where amendment would cause delay at a late stage in the

proceedings.").[4]

Reality presents a different situation. Although Aerosonic did not know Joby CT-scanned an Aerosonic probe by reading Joby's written discovery responses (Doc. 180, p. 9), Aerosonic did know the air data probes in Joby's possession and did know what trade secrets those probes contained (including internally). The revelation of the CT scan did reveal a potential method of misappropriation, but did not reveal a new unknown trade secret being misappropriated. Indeed, Aerosonic explicitly alleges "Joby's use of Aerosonic's trade secrets enabled Joby to make unauthorized and unlicensed replicas of portions or all of Aerosonic's air data probes, including copying aspects of internal and external designs, dimensions, tolerances, . . . and functionality, constituting misappropriation of Aerosonic's trade secrets." (First Amended Complaint Doc. 45, ¶ 189).

Upon consideration, there are no exceptional circumstances to explain why Aerosonic could not have identified the proposed trade secret relating to the internal design and layout of specified internal components, back in October. The proposed trade secret relates to the internal design and layout of the air data probe. Aerosonic knew Joby possessed the probe, alleged Joby

---

[4] Although *Valfa Corp* addresses amending the pleadings, not a trade secret list, the court finds the reasoning persuasive because the trade secret list, although not a pleading, still governs the scope of discovery similar to a pleading such as a complaint.

copied internal designs, and knows what alleged trade secrets are embodied by its own air data probes. *See Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (affirming the district court's decision to deny leave to amend the complaint when the facts were available at the time the complaint was filed).

### b.  Prejudice and Scheduling

Aerosonic argues "no prejudice exists where the amendment is only necessary because of Joby's withholding of responsive discovery." (Doc. 180, pp. 13−14). In further support, Aerosonic claims Joby is not prejudiced because Aerosonic's expert Dr. Kumar provided expert testimony relating to the proposed trade secret in his opening expert report served on February 20, 2026. (Doc. 180, p. 16). Joby counters that allowing an amendment to the trade secret list would derail the case schedule and cause immense prejudice towards Joby. Joby states if the trade secret is allowed, "Joby would then need additional discovery, fact depositions, and expert testimony to explore at least Aerosonic's efforts to protect the secrecy of its new alleged trade secret . . . ." (Doc. 218, p. 13).

The court agrees with Joby's position. At the December 16 discovery conference, the court made it clear "prejudice would grow greatly for Joby if Aerosonic did expand that [trade secret] list any further. (Doc. 140, p. 25). The

case is on the September trial calendar. Although the summary judgment deadline is temporarily suspended pending rulings on several outstanding motions, it will be set at the next case management conference to be held some time next week.

Permitting an additional trade secret at this late stage of discovery would greatly prejudice Joby's ability to prepare a defense. *See Schenone v. Zimmer Holdings, Inc.*, No. 3:12-CV-1046-J-39MCR, 2014 WL 12619908 at *3 (M.D. Fla. June 3, 2014) (finding "adding an additional claim . . . at this late stage of the litigation, after close of discovery, would unduly prejudice Defendants."). In addition, Aerosonic's expert's, Dr. Kumar's, opening expert report addressing the proposed trade secret does not adequately serve as a substitute for Joby to fully conduct discovery to investigate the proposed trade secret.

### c.    Timeliness and Accuracy

Aerosonic claims Joby deliberately withheld and knowingly concealed the CT scan and related evidence. This claim is used in furtherance of Aerosonic's argument to show exceptional circumstances and absence of prejudice towards Joby.

### i.    Request for Production No. 13

On June 25, 2025, Aerosonic served request for production No. 13 (RFP

13) on Joby. RFP 13 requested "All documents, Communications, and Things relating to any efforts by You to assess, reverse engineer, image, scan, evaluate, test, analyze, tear-down, obtain data from, or derive information from Aerosonic's Air Data Probes." (Doc. 180-3, p. 4). Aerosonic argues it sought this information since the beginning of the case and Joby's failure to produce documents until January 30, 2026 should entitle Aerosonic to amend the trade secret list.

On September 26, 2025, Joby amended its response to RFP 13 to indicate it would produce all responsive non-privileged documents. (Doc. 180-5, p. 18). Then, as Aerosonic admits, Joby produced the documents before the court ordered February 6, 2026, deadline. (Doc. 180, p. 8). Joby produced documents evidencing the CT scan on January 30, 2026, with more substantive document productions on February 6 and 7. (Doc. 180, pp. 6–7). Therefore, Joby did not commit a discovery violation, and so the timing of discovery does not provide the exceptional circumstances to permit Aerosonic to amend the trade secret list.

### ii.    Interrogatory No. 4

On July 3, 2025, Aerosonic served Interrogatory No. 4 on Joby. Interrogatory No. 4 asked Joby to "Describe any reverse engineering of any Aerosonic Proprietary Information by Joby." (180-6, p. 8). Joby answered that

it could not fully respond to this interrogatory until resolution of the trade secret disputes and that Joby would identify documents on a rolling basis pursuant to Rule 33(d). (Doc. 180, p. 9). Joby did not amend this Interrogatory answer. Joby claims its answer is accurate because a CT scan is not reverse engineering. (Doc. 218, p. 19). Joby distinguishes scanning the probe from "reverse engineering" the probe. Joby explains "reverse engineering" would require using the scan to develop its own probe. Aerosonic and Joby dispute whether the Slack communications show Joby relied on the scan to "reverse engineer" its own probe.

Aerosonic does not request the court to compel Joby to amend its interrogatory answer. Rather, Aerosonic argues this presents an exceptional circumstance to permit Aerosonic to add an additional trade secret to the case. *See* (Doc. 180, p. 4) ("While Aerosonic could request a wide range of sanctions under Rule 37, Aerosonic would rather . . . remedy the issue by adding a single additional trade secret . . . ."). The history of this interrogatory response does not constitute an exceptional circumstance permitting the late addition of another trade secret. Allowing a second amendment would prejudice Joby and could jeopardize the September trial date.

## III.   Conclusion

For the reasons stated above, Aerosonic's motion to amend trade secret

identification (Doc. 180)[5] is **DENIED**.

      **ORDERED** in Tampa, Florida, on May 15, 2026.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

---

[5] The redacted version of Aerosonic's motion to amend trade secret identification is at Doc. 184.