UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AEROSONIC LLC,

      Plaintiff,

v.                                                                    Case No.: 8:25-cv-554-VMC-AAS

JOBY AERO, INC.,

      Defendant.

_____/

## ORDER

Defendant Joby Aero, Inc., (Joby) moves to compel Plaintiff Aerosonic LLC (Aerosonic) to respond to Joby's Interrogatory Nos. 20, 22, 24, and 25. (Doc. 191). Aerosonic responded in opposition. (Doc. 211). Joby replied to Aerosonic's response. (Doc. 272).

## I.    BACKGROUND

This motion to compel arises out of a dispute over the number of interrogatories Joby submitted to Aerosonic.

On February 6, 2026, Joby served its sixth set of interrogatories (Nos. 19–24) on Aerosonic. (Doc. 191, p. 2). On March 2, 2026, Joby served its seventh set of interrogatories (No. 25) on Aerosonic. (*Id.*).

On March 9, 2026, Aerosonic objected to each of the interrogatories in Joby's sixth set on grounds that "it exceeds 25 cumulative interrogatories,

including all subparts." (Doc. 191, p. 4). The parties then held a meet and confer.[1] Aerosonic offered a compromise where both parties would stipulate to serving additional interrogatories. Joby rejected the stipulation, but did agree to withdraw Interrogatory Nos. 19, 21, and 23.

Aerosonic maintains its objection and has not responded to Interrogatory Nos. 20, 22, 24, and 25 on the basis that Joby exceeded the 25-interrogatory limit permitted under the Federal Rules. Joby requests the court overrule Aerosonic's objections and compel responses to Interrogatory Nos. 20, 22, 24, and 25. Aerosonic also argues Joby's motion should be denied because it fails to mention or articulate any prejudice.[2]

## II.  ANALYSIS

"Unless otherwise stipulated or ordered by the court, a party may serve on another party no more than 25 written interrogatories, including all discrete

---

[1] Aerosonic offered Joby a compromise to mutually allow both parties to serve "a few" additional interrogatories. Joby rejected Aerosonic's offer, withdrew Interrogatory Nos. 19, 21, and 22, and filed this motion instead. Joby's reply addresses the full context of Aerosonic's offer and explains why it was unfair to Joby. Regardless, the internal dealings between Aerosonic and Joby do not substantively change the outcome of this motion to compel.

[2] The case Aerosonic cites in support, *Borden, Inc. v. Florida E. Coast Ry. Co.*, 772 F.2d 750 (11th Cir. 1985), does not support that Joby must allege prejudice to succeed on a motion to compel. Rather, *Borden*, says that "[d]istrict courts have great discretion over discovery matters and [the appellate] court will not reverse a discovery ruling absent a finding of an abuse of discretion to the prejudice of a party." *Borden,* 772 F.2d at 756–57.

subparts." Fed. R. Civ. P. 33(a)(1). Rule 33 does not define "discrete subparts." "Resolving questions whether a subpart to an interrogatory is 'discrete' under Rule 33 such that it should be counted separately can be a difficult task and courts considering this question have applied various tests." *Oliver v. City of Orlando*, No. 6:06CV-1671-ORL-31DAB, 2007 WL 3232227 at *2 (M.D. Fla. Oct. 31, 2007) (citation and internal quotations omitted).

"Courts in this Circuit often apply the 'related question' test to determine whether a subpart is part of an interrogatory or is more properly considered a discrete, separate interrogatory." *Sun State Ford, Inc. v. Ford Motor Co.*, No. 6:23-CV-1728-PGB-LHP, 2025 WL 1580798 at *2 (M.D. Fla. June 4, 2025). "Under the 'related question' test, courts assess whether the subparts are 'logically or factually subsumed within and necessarily related to the primary question.'" *Ingole v. Certain Underwriters at Lloyd's of London*, No. 808-CV-1089-T-27EAJ, 2009 WL 1211359 at *1 (M.D. Fla. May 4, 2009) (quoting *Oliver*, 2007 WL 3232227, at * 2). "[A]n interrogatory which contains subparts that inquire into discrete areas should, in most cases, be counted as more than one interrogatory." *Id.* (quoting *Border Collie Rescue, Inc. v. Ryan,* No. 3:04–CV–568–J32–HTS, 2005 WL 662724, at *1 (M.D. Fla. March 15, 2005)).

### A.    Total Interrogatories Prior to the Sixth Set of Interrogatories

Joby contends at most it served 21 interrogatories prior to serving its sixth set of interrogatories on Aerosonic. (Doc. 191, p. 12). Aerosonic disagrees. There is a dispute in counting the total number of interrogatories, including discrete subparts, served between Interrogatory Nos. 2, 6, 7, 12, and 13.

### i.    Interrogatory No. 2

Interrogatory No. 2 is as follows:

> For each trade secret that you claim has been misappropriated in this Litigation and for each confidential information you claim has been improperly used, identify with specificity when it was initially created and each modification made to it, including the substance and date of each modification; the person(s) who created the alleged trade secret and those who participated in or contributed to its creation, each contribution they made and when; whether any person or entity who is not employed with Aerosonic is aware of the item or the information in it, including the identity of the person or entity and, if known, when and how they became aware of it; the amount of effort or money expended by you in developing the item or information and the details of such efforts or expenditures.

(Doc. 211-3, p. 10).

Joby contends that Interrogatory No. 2 should count as one interrogatory, or, at most, two distinct interrogatories. At most, Joby identifies the two distinct requests as: "(1) the requests seeking clarification regarding the in-house or external participation in the creation and/or modification of the alleged trade secrets, and (2) the requests seeking clarification regarding the

efforts and monetary expenditures in the creation and/or modification of the alleged trade secrets." (Doc. 191, p. 8).

Aerosonic claims Interrogatory No. 2 counts as three district interrogatories. Aerosonic counts three discrete areas of inquiry as follows: "(1) the details concerning each trade secrets creation; (2) knowledge of any trade secrets by those outside the employ of Aerosonic and how they became aware of it; and (3) the amount of effort or money expended in developing the trade secret." (Doc. 211, p. 5).

The court agrees and concludes Interrogatory No. 2 contains three discrete subparts. The first subpart requests details concerning the creation of the trade secret. The second subpart requests information whether anyone outside of Aerosonic knows the trade secrets. The third subpart requests the amount of effort and money expended in creating the trade secrets. The court finds these are discrete subparts because the subparts are not "subsumed and necessarily related to the primary question" with the primary question being the identification of when each allegedly misappropriated trade was created. *See Ingole*, 2009 WL 1211359 at *1.

### ii.    Interrogatory No. 6

Interrogatory No. 6 is as follows:

In as specific detail as is available to Aerosonic, identify all aircraft, military equipment (including missiles), vehicles, and

anything else—including identifying both classes/types of vehicles and individual vehicles—that Aerosonic knows or has reason to believe (a) use products that embody any Alleged Trade Secret or portion thereof, (b) were developed or produced with reliance on any Alleged Trade Secret or portion thereof, or (c) use Aerosonic air data probes capable of measuring pitot pressure, static pressure, angle of attack ("AoA"), angle of sideslip ("AoS"), or combinations thereof, including but not limited to Aerosonic's SLZ8400-2 (including SLZ8400-2L and SLZ8400-2R), SLZ8420, BB1, BB2, BB3, or CP5100 air data probes.

(Doc. 211-5, pp. 10−11).

Joby contends Interrogatory No. 6 counts as one interrogatory because the subparts "merely request additional information regarding the request that Aerosonic identify 'all aircraft, military equipment (including missiles), vehicles, and anything else' on which Aerosonic has utilized its alleged trade secret information (including products embodying the alleged trade secret information)." (Doc. 191, p. 9).

Aerosonic claims Interrogatory No. 6 constitutes two interrogatories because it requests "(1) identification of all aircraft and equipment using products that embody the trade secrets; and (2) identification of all aircraft and equipment using Aerosonic air data probes **not embodying the trade secrets**, but which are capable of measuring certain variables. (emphasis added.)" (Doc. 211, p. 6).

Upon review, the court agrees with Aerosonic's interpretation, and the court finds Interrogatory No. 6 contains two discrete subparts. The primary

question of this Interrogatory requests Aerosonic to identify all aircraft and

equipment that embody an Aerosonic trade secret. Specifically, the court finds

subpart (c) is not necessarily subsumed by the primary question because

subpart (c) is not necessarily limited to the embodiment or use of Aerosonic

trade secrets. Therefore subpart (c) is a discrete subpart and Interrogatory No.

6 counts as two interrogatories.

### iii.   Interrogatory No. 7

Interrogatory No. 7 is as follows:

Identify all persons or entities with which Aerosonic has provided
or exchanged (a) any Alleged Trade Secret, including portions
thereof, (b) information relating to products that embody any
Alleged Trade Secret, including portions thereof, or (c) information
relating to Aerosonic air data probes capable of measuring pitot
pressure, static pressure, angle of attack ("AoA"), angle of sideslip
("AoS"), or combinations thereof, including but not limited to
Aerosonic's SLZ8400-2 (including SLZ8400-2L and SLZ8400-2R),
SLZ8420, BB1, BB2, BB3, or CP5100 air data probes, and for each
such person or entity identify the Alleged Trade Secret, or portion
thereof, information, or air data probe provided or exchanged.

(Doc. 211-5, p. 11).

Joby contends Interrogatory No. 7 constitutes a single interrogatory

because "[i]ts subparts merely seek clarification regarding Aerosonic's history

of providing or exchanging the alleged trade secret information with third

parties." (Doc. 191, p. 10). Like the previous Interrogatory, Aerosonic claims

there are two discrete subparts: "(1) Identification of all persons or entities

with which Aerosonic exchanged any trade secrets; and (2) identification of all persons or entities with which Aerosonic exchanged information regarding Aerosonic air data probes not embodying the trade secrets, but which are capable of measuring certain variables." (Doc. 211, p. 6).

Upon review, the court find Interrogatory No. 7 contains two discrete subparts. The primary question concerns the identification of the people or entities Aerosonic provided with trade secrets. The discrete subpart, (subpart (c)), is not subsumed and necessarily related to the primary question. The language in subpart (c) is broader and captures information related to Aerosonic air data probes that does not necessarily involve a trade secret. Therefore, Interrogatory no. 7 counts as two interrogatories.

### iv.    Interrogatory No. 12

Interrogatory No. 12 is as follows:

Describe in detail the facts and circumstances related to Aerosonic's assertion that the "Loaner Probe" "was destroyed at least two years ago as part of Aerosonic's routine destruction of old parts," including describing the "investigation" that Aerosonic conducted, the facts supporting Aerosonic's "best and reasonable belief after its investigation that the Loaner Probe was destroyed as part of Aerosonic's routine scrap[p]ing around 2023" (such as who destroyed the "Loaner Probe," when it was destroyed, how it was destroyed, and why it was destroyed), the facts supporting Aerosonic's assertion that "Aerosonic routinely collects and scraps old probes that are no longer in use," and identify all documents related to the "Loaner Probe" and its destruction. See Aerosonic's Response to Joby's First Request for Inspection to Plaintiff Aerosonic LLC (Oct. 31, 2025).

8

(Doc. 211-6, pp. 10−11).

Joby contends Interrogatory No. 12 should be counted as one interrogatory and, at most, could be counted as two interrogatories. Aerosonic contends Interrogatory No. 12 contains three discrete subparts: "(1) Description of the facts and circumstances related to the scrapping of the Aerosonic loaner probe; (2) facts supporting Aerosonic's routine scrapping and collection efforts for old probes no longer in use; and (3) identification of all documents related to the Aerosonic loaner probe." (Doc. 211, p. 6).

Upon review, the court finds Interrogatory No. 12 contains three discrete subparts. The primary question concerns the facts and circumstances concerning Aerosonic's assertion the Loaner Probe was destroyed. Facts supporting Aerosonic's assertion that it routinely collects and scraps old probes no longer in use is a discrete subpart because it is not necessarily subsumed by the primary question. Likewise, the request to identify all documents related to Loaner Probe and its destruction is a discrete subpart. *See Commodores Entm't Corp. v. McClary*, No. 614CV1335ORL37GJK, 2015 WL 12843874 at *2−3 (M.D. Fla. Nov. 6, 2015) (finding two discrete subparts where an interrogatory requested identification of documents supporting a requested explanation); *Sun State Ford, Inc. v. Ford Motor Co.*, No. 6:23-CV-1728-PGB-LHP, 2025 WL 1580798 at *3 (M.D. Fla. June 4, 2025) (finding an interrogatory

9

requesting to explain the factual basis and identify documents in support constitutes two discrete subparts); *see also New River Dry Dock, Inc. v. Falls at Marina Bay, L.P.*, No. 08-60216-CIV, 2008 WL 2620727 (S.D. Fla. June 30, 2008) ("Court[s] have also held that the request for identification of documents should be counted as a separate interrogatory."). Therefore, Interrogatory No. 12 constitutes three interrogatories.

### v.     Interrogatory No. 13

Interrogatory No. 13 is as follows:

Describe in detail all differences between the "Loaner Probe" and the "Probes SLZ8400-2L and SLZ8400-2R" listed in Ex. A to Aerosonic's ROG 1 response. Aerosonic's Response to Joby's First Request for Inspection to Plaintiff Aerosonic LLC (Oct. 31, 2025). To the extent You contend that the "Loaner Probe" did not embody or disclose any of Alleged Trade Secret numbers 6-41 or 48 50, identify which Alleged Trade Secrets the "Loaner Probe" did not embody or disclose and identify all documents and evidence supporting Your contention for each such Alleged Trade Secret.

(Doc. 211-6, p. 11).

Joby contends Interrogatory No. 13 should be counted as one interrogatory and, at most, could be counted as two interrogatories. Aerosonic contends Interrogatory No. 13 contains two discrete subparts: "(1) Description of the differences between the loaner probe and the Aerosonic probe developed for Joby; and (2) identification of any trade secrets not embodied by the Loaner Probe and all documents and evidence supporting such contention."

Upon review, the court finds a description of the difference between the probes would necessarily include, identification of any trade secrets not embodied by the loaner probe. However, like Interrogatory No. 12, Interrogatory No. 13 also requests Aerosonic to identify all documents and evidence supporting the contention concerning the Loaner Probe not embodying trade secrets. Therefore, Interrogatory No. 13 counts as two interrogatories because the request to identify documents and evidence is a discrete subpart to the main question of describing all differences between the "Loaner Probe" and the "Probes SLZ8400-2L and SLZ8400-2R."

## III.   CONCLUSION

Accounting for the discrete subparts, Joby already served 25 interrogatories on Aerosonic. Accordingly, the motion (Doc. 191) is **DENIED.**

**ORDERED** in Tampa, Florida on May 20, 2026.

_Amanda Arnold Sansone_

AMANDA ARNOLD SANSONE
United States Magistrate Judge

11