**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**AEROSONIC LLC,**

     **Plaintiff,**

**v.**                            **Case No. 8:25-cv-554-VMC-AAS**

**JOBY AERO, INC.,**

     **Defendant.**

_____/

**<u>ORDER</u>**

Plaintiff Aerosonic LLC (Aerosonic) moves to compel Defendant Joby Aero, Inc. (Joby) to produce Joby's CEO JoeBen Bevirt for deposition. (Doc. 233). Joby responded in opposition. (Doc. 270).

## I.    BACKGROUND

On March 27, 2026, Aerosonic noticed Mr. Bevirt's deposition for April 1, 2026. (Doc. 233, p. 2). The discovery deadline was April 3, 2026. Aerosonic acknowledges it did not provide the required fourteen days written notice to Joby as required under the Local Rules. (*Id.* at 8). However, Aerosonic claims exigent circumstances both prevented Aerosonic from being able to provide fourteen days notice and justify compelling the deposition despite the untimely notice. Aerosonic also claims the apex doctrine does not preclude Mr. Bevirt's deposition. (*Id.* at 9−12).

1

Joby objects to producing Mr. Bevirt for deposition based on the timing of the deposition notice and the apex doctrine. (Doc. 270). Joby also requests sanctions against Aerosonic for bringing this motion. (*Id.*).

## II.    APPLICABLE LAW

Federal Rule of Civil Procedure 30 requires a party to give "reasonable written notice" before conducting a deposition. Fed. R. Civ. P. 30(b)(1). The Middle District of Florida Local Rules supplement the Federal Rule and requires fourteen days' written notice to the deponent. Local Rule 3.04, M.D. Fla. The Middle District of Discovery Handbook provides further guidance on noticing depositions; relevantly it provides, "Local Rule 3.04 requires the party noticing the deposition to give a minimum of fourteen days' written notice to every other party and the deponent, absent agreement or an order based upon some exigent circumstance."  Middle District Discovery Handbook (2021) at Section II.A.1.

In addition, apex depositions are "[r]equests to depose high level corporate officers." *Chick-Fil-A, Inc. v. CFT Dev., LLC*, Case No. 5:07-cv-501-OC-10GRJ, 2009 WL 928226, at *1 (M.D. Fla. Apr. 3, 2009). The CEO of a company qualifies as a high-ranking corporate officer for purposes of the apex doctrine. "Courts have long recognized that it may be appropriate to limit or preclude depositions of high-level corporate officers or government officials[.]" *Asberry v. Sch. Bd. of Pasco Cnty., Fla.*, No. 818CV02222T35SPF, 2019 WL

2

12383128, at \*1 (M.D. Fla. Aug. 20, 2019). "[H]igh[-] level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." *Bernstein v. Asbury Auto. Group, Inc.*, No. 3:19-CV-1175-BJD-JRK, 2021 WL 1390005 at \*4 (M.D. Fla. Apr. 13, 2021) (internal quotation and citation omitted).

"[A] party seeking to depose a high-ranking [] officer must first establish that the executive: (1) has unique, non-repetitive, firsthand knowledge of the facts at issue; and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015) (internal quotation and citation omitted). The party requesting the deposition of the high-ranking official must show that the deposition is necessary. *Id.*

## III.  ANALYSIS

Aerosonic argues exigent circumstances justify the timing of the deposition notice and that the apex doctrine does not preclude the deposition. The court disagrees for the reasons stated below.

### A.   The Timing of the Deposition Notice

Aerosonic has not demonstrated exigent circumstances to justify a court order permitting the deposition to proceed on limited notice. In sum, Aerosonic claims the exigent circumstances are that it could not have identify Mr. Bevirt

3

as critical witness until days before the close of discovery. Specifically, Aerosonic claims the March 24 deposition of Jon Wagner revealed Mr. Bevirt was allegedly "directly involved with the design and development of Joby's probe." (Doc. 233, p. 8). Thereafter, Aerosonic "immediately undertook an investigation to identify produced documents demonstrating Bevirt's direct knowledge and involvement in the design of Joby's air data probe." (*Id.*). The investigation into the documents produced by Joby led to the discovery of 811 instances "where Bivert was directly involved in a produced message." (*Id.*).

However, a review of the briefing reveals Aerosonic possessed the relevant documents allegedly showing Mr. Bevirt's involvement before Mr. Wagner's deposition. For example, Aerosonic cites Exhibit D to its motion to support its claim alleging Mr. Bevirt's direct involvement with the design and development of the Joby probe. Aerosonic claims this was not discovered until after the March deposition of Mr. Wagner. However, Aerosonic explains it produced Exhibit D to Joby on February 6, 2026 and even "produced another document with the same statement, JOBY00166775-76, even earlier—on January 30, 2026." (Doc. 270, p. 5).

Aerosonic also admits through the February 20, 2026 deposition of Dylan Aramburu that "Mr. Bevirt was identified as involved in developing Joby's probe . . . ." (Doc. 233, p. 2). In a footnote, Aerosonic explains due to Mr. Aramburu being a "fairly junior Joby engineer at the time" Aerosonic needed

4

to confirm Mr. Bevirt's involvement with more senior employees before "rushing to depose the CEO." (Doc. 233, p. 2, fn. 1). However, Aerosonic now asserts it first learned of Mr. Bevirt's direct involvement after a discovery in Mr. Wagner's March 24 deposition and subsequent investigation into the Joby's large productions.

Further, Aerosonic cites multiple Exhibits to support its contention that it newly discovered that Mr. Bevirt directed the development process of the Joby probe. (Doc. 233, pp. 10–11) (citing Exhibits G, H, I, J, K, L). Yet, Joby explains Aerosonic's Exhibits G, H, and J–L were produced on February 3, 2026 and Exhibit I was produced on January 30, 2026.

Therefore, although Aerosonic may have only discovered Mr. Bevirt's alleged involvement after the March deposition of Mr. Wagner, Aerosonic's failure to review Joby's timely productions, which would have revealed the information Aerosonic learned at the March deposition, do not present exigent circumstances to permit the deposition to proceed on limited notice.

## B.    The Apex Doctrine

Assuming arguendo, exigent circumstances were present the motion to compel still fails because Mr. Bevirt's deposition is barred by the apex doctrine. Aerosonic has not established the CEO, Mr. Bevirt, has any unique knowledge of the facts or information at issue that could not be obtained by other less intrusive means.

Aerosonic argues, "While other employees have and will testify to the nature of these messages, it is critical for Aerosonic to hear Bevirt's perspective, as the CEO, and main driver of the air data probe development at Joby." (Doc. 233, p. 12). Aerosonic explains Mr. Bevirt's direct involvement in securing the wind tunnel for the alleged testing of the early prototype Joby probe and Aerosonic probe make Mr. Bevirt an important fact witness with unique knowledge. In further support, Aerosonic specifically alleges Exhibits G−L show Mr. Bevirt directed the development process of the Joby probe.

Joby argues Aerosonic largely misrepresents the communications involving Mr. Bevirt and denies that Mr. Bevirt has any unique knowledge or any personal involvement in developing and testing Joby's air probe. (Doc. 270, p. 12).

Aerosonic has not met its burden to show Mr. Bevirt possesses unique firsthand knowledge of the facts at issue. Indeed, Mr. Bevirt's declaration affirms he did not have direct, personal involvement in the development and testing of Joby's air probe and has no unique knowledge about that development. (270-11, ¶¶ 3−5). Further, Aerosonic's motion and the attached exhibits do not demonstrate the deposition of Mr. Bevirt is necessary.

## IV.   CONCLUSION

Accordingly, Aerosonic's motion to compel the deposition of JoeBen Bevirt (Doc. 233) is **DENIED**. Because the motion was substantially justified

6

and reasonable people could differ as to the outcome, an award of expenses is unjust and both sides shall bear their own expenses for the motion.

**ORDERED** in Tampa, Florida on May 20, 2026.

*Amanda Arnold Sansone*

AMANDA ARNOLD SANSONE
United States Magistrate Judge