**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

AEROSONIC LLC,

        Plaintiff,

v.

JOBY AERO, INC.,

        Defendant.

----------------------------------------------------------

Case No. 8:25-cv-554-VMC-AAS

**<u>JOBY'S RESPONSE TO PLAINTIFF'S NOTICE OF WITHDRAWAL OF
EXHIBIT AT DKT 321-15 AND RELATED ARGUMENTS</u>**

## I.    INTRODUCTION AND BACKGROUND

Aerosonic altered a document and then filed it with the Court, telling the Court that the altered document is authentic. Further, Aerosonic asked the Court to decide the parties' summary judgment motions in reliance on that altered document. When Joby caught the alteration and raised it with Aerosonic multiple times, Aerosonic did not correct the record—it defended the document with a perfunctory Notice of Withdrawal (Docs. 432, 436) that misstates the facts, accuses Joby of misconduct instead, improperly reveals confidential mediation discussions, and does nothing to cure Aerosonic's apparent continued fraud on the Court. Put simply, the Notice is not a withdrawal. It is a fraud to cover up a fraud.

That document at issue is a packing slip, which includes a certification of product conformity for four air data probes Aerosonic sold and shipped to Joby. Aerosonic represented it as a copy of the original packing slip it sent Joby with an April 6, 2022 shipment of air data probes (the "2022 original packing slip"). But the copy Aerosonic filed is dated May 29, 2025, on its face, has a certification of conformity signed by a different individual, and it carries contract terms that the 2022 original packing slip does not (the "2025 altered packing slip"). *Compare* Doc. 321-15 (the 2025 altered packing slip) *with* Doc. 413-1 at 4, 6 (the 2022 original packing slip). The added terms are not incidental. They bear on which contract governed Joby's purchase of the probes from Aerosonic, including whether Joby was free to reverse engineer them—a core basis for Aerosonic's claims in this case.

1

Joby flagged the problem more than three weeks ago.[1] Doc. 377-1 at 17 ("Aerosonic and its expert rely on an exhibit that is not authentic and may have even been fabricated."). Aerosonic did not respond by withdrawing the 2025 altered packing slip. After having brought this serious issue to Aerosonic's attention in no uncertain terms, at a July 6, 2026 meet and confer, Aerosonic's counsel said that the question of which party was relying on the real document was one for the jury.[2] Eleven days later, in its reply in support of summary judgment, Aerosonic went further, urging the Court to rely on the 2025 altered packing slip, representing that it was "from [Aerosonic's] database with an accompanying email corroborating its authenticity." Doc. 430 at 6. That representation in reply came after Joby had twice put Aerosonic on notice that the document had been altered. Aerosonic offered no account of why its "copy," printed in 2025, differed from the original Joby had held since 2022.

Despite being on notice that its document was altered and not an authentic copy, Aerosonic intended to rely on the altered document to support its positions on summary judgment and to present the same to the jury. Joby had no choice but to prepare a sanctions motion. Before filing it, Joby gave Aerosonic another chance. At the Court-ordered conference on July 27, and in a follow-up email, Joby urged

---

[1] Although Joby flagged Aerosonic's express reliance on an altered packing slip three weeks ago, Joby flagged the existence of the 2022 original packing slip and the absence of an "expressly conditional" term therein since May 19, 2025, when Joby first filed its copy of the 2022 original packing slip on the docket in support of its motion to dismiss. Doc. 28 at 14-15; Doc. 28-3 (packing slip).

[2] Whether a party is proffering fabricated evidence is not an issue for the jury. *See Frazier v. Se. Georgia Health Sys., Inc.*, 2024 WL 889994, at *17 (S.D. Ga. Mar. 1, 2024), *aff'd*, 2024 WL 4357399 (11th Cir. Oct. 1, 2024) (Court has the "power to protect . . . its jurors from exposure to clearly fabricated evidence").

2

Aerosonic withdraw, by noon on July 29, all portions of briefing that Aerosonic filed that cited, discussed, or otherwise relied on the 2025 altered packing slip, and the portions of Aerosonic's expert opinion that relied on the 2025 altered packing slip. Doc. 432-1 at 1-2. Had Aerosonic withdrawn the altered document and everything built upon it, without trying to further mask Aerosonic's conduct, the matter may have ended there.

But Aerosonic's Notice did the opposite. It withdrew almost nothing. It replaced the missing withdrawal with an unsupported cover story the record contradicts. It accused Joby's counsel of an ethics violation—and disclosed confidential mediation communications to make the accusation, which violates this Court's order and Florida law. The Notice does not answer Joby's concern that the 2025 packing slip was altered for litigation. In fact, the Notice raises serious questions about the truthfulness of the partial explanations Aerosonic does provide. Thus, it presumptively confirms that Aerosonic perpetrated a fraud on the Court and is piling more fraud on top to try to cover it up.

Joby is well aware that its accusations of altering evidence and fraud on the Court are most serious and has done its best to approach this issue with professionalism and candor, and has repeatedly tried to reach a mutual resolution with Aerosonic to avoid involving the Court. Unfortunately, Joby must now move for case-

3

terminating sanctions as that is the only proper remedy for Aerosonic's continued fraud on the Court.[3]

## II.    AEROSONIC'S NOTICE MISREPRESENTS MULTIPLE FACTS AND RELIES ON INCREDIBLE STATEMENTS

Several of Aerosonic's representations in the Notice are easily debunked or are inconsistent with the record and evidence. *First*, Aerosonic contends it prepared and produced its May 29, 2025 packing slip in response to Joby's discovery requests:

> In response to Joby's discovery requests, Aerosonic personnel asked its supply chain clerk to retrieve a copy of it. Dkt. 429-5. Aerosonic then produced both the Packing Slip and the email corroborating its retrieval.

Doc. 432 at 3; Doc. 436 at 3. On May 29, 2025, Greg Van Bemden of Aerosonic sent an email asking Karen Rosales to "see if [she] can find the packing lists" for shipments to Joby, including the April 6, 2022, air data probe shipment. Doc. 430-5 at 2. However, it was not until a month later, on June 25, 2025, that Joby served its first set of discovery requests. Doc. 110-1 at 12-13; Ex. A (Joby's service email). Consequently, the packing slip could not have been procured "in response to Joby's discovery requests," making Aerosonic's explanation and representation false. Further, Aerosonic did not produce the 2025 altered packing slip until December 12, 2025, seven months after it was printed.

*Second*, Aerosonic contends—without providing any details or evidence—that "Aerosonic updates its form template from time to time, which explains any

---

[3] To the extent that this response does not fully address every argument in the Notice—including Aerosonic's contention that the packing slip is immaterial—those points are addressed in Joby's contemporaneously filed motion for sanctions.

differences between" the two versions of the packing slip. Doc. 432 at 4; Doc. 436 at 4. Taken on its face, this is an admission that the 2025 altered packing slip is not an authentic copy of the 2022 original. Further, Aerosonic does not say when it changed the form template, what "from time to time" means, if the template has ever changed other than to create the 2025 altered packing slip for this litigation, or why it changed the template. But as Joby details with supporting evidence in its motion for sanctions, Aerosonic's document production reveals that from at least June 22, 2018 through at least January 24, 2025, Aerosonic's packing slip template did not change in any respect other than updating the signatory on the Certificate of Conformance (even keeping the "Comformance" typo for all those years). [4] Aerosonic's "from time to time" representations appears intentionally misleading, at best.

And even taking at face value Aerosonic's representation that the 2025 altered packing slip was the result of a template change, the only time Aerosonic modified its template over the course of seven years was at some point between January 24, 2025 (based on Aerosonic's production of an unaltered packing slip from January 24, 2025) and May 29, 2025 (the date of the 2025 altered packing slip).

On May 19, 2025, Joby filed a motion to dismiss in which Joby argued that the forms exchanged between the parties in that transaction did not contain an "expressly conditional" term—the exact term added to Aerosonic's 2025 altered packing slip. *See*

---

[4] Aerosonic produced no packing slips dated between January 24, 2025, and May 29, 2025.

Doc. 28 at 14-18; 430-5 at 2. Just 10 days later, Aerosonic printed its 2025 altered packing with the added "expressly conditional term."

At the very least, Aerosonic's modification of the template without preserving the 2022 original packing list is admitted spoliation of important evidence. Aerosonic alleged it discovered Joby's purported use of Aerosonic proprietary information in 2024 (Doc. 45 ¶109) and filed its original complaint on March 7, 2025 (Doc. 1), so by the end of January 2025 (the earliest Aerosonic could have modified the template based on currently known evidence) it already had a duty to preserve evidence. That means that Aerosonic admits that it spoliated the original 2022 packing slip.

*Third*, Aerosonic's suggestion that it does not have an original copy of the packing slip is implausible. Doc. 432 at 4, Doc. 436 at 4 (asserting that "packing slips are not maintained in hard copy," and "Aerosonic retained only the underlying data in the electronic database"). The packing slip includes a signed certificate of conformance. And industry certification standards with which Aerosonic publicly asserts it complies require retaining such records, and Aerosonic's own policies mandate their preservation electronically and in hard copy without alteration.[5] And again, if this were true, then it is an admission that Aerosonic spoliated the original 2022 packing slip.

*Fourth*, Aerosonic contends that it "did not know there was any other version of the Packing Slip in existence" and "[t]he Joby version of the packing slip was not

---

[5] Joby explains this issue in detail in its contemporaneously filed motion for sanctions.

cited in the case until Joby made its 'fabrication' claim in opposition to Aerosonic's motion for summary judgment on July 3, 2026." Doc. 432 at 3-4; Doc. 436 at 3-4. That is also inaccurate.

Joby filed its 2022 original packing slip on May 19, 2025 (Doc. 28-3), and again on July 8, 2025 (Doc. 53-4). Both times, Joby argued that the forms exchanged between the parties in that transaction did not contain the same "expressly conditional" term added to Aerosonic's 2025 altered packing slip when it was printed on May 29, 2025. *See* Doc. 28 at 14-18; Doc. 53 at 9-11; Doc. 430-5 at 2. And Aerosonic suggested in its responsive briefing on July 29, 2025, that it would produce evidence the parties *did* exchange a form with the "expressly conditional" term. *See* Doc. 56 at 13 (Aerosonic arguing "whether Aerosonic's alleged acceptance of Joby's purchase order was or was not made 'expressly conditional' on Aerosonic's Sales Terms and Conditions" is a "hotly-contested threshold fact question"). That could only have been a veiled reference to its 2025 altered packing slip, given that none of the forms actually exchanged between Joby and Aerosonic for the relevant transaction contained the "expressly conditional" language. *See* Doc. 53 at 9-10; Doc. 53-2 (purchase order); Doc. 53-3 (Aerosonic's terms); Doc. 53-4 (original 2022 packing slip).

On this point, Aerosonic *blames Joby* for not spotting Aerosonic's altered copy earlier. It is true that Joby gave Aerosonic's altered packing slip to its industry expert, who cited it and was deposed on it. *See* Doc. 432 at 3-4; Doc. 436 at 3-4. But, Joby's expert opinions were unrelated to whether the packing slip did or did not have the

added "expressly conditional" term. And at that point Joby was unaware that the packing slip was not an authentic copy of a packing slip Aerosonic sent Joby—it was a packing slip from Aerosonic's document production and Joby was not looking for fabricated evidence.

*Fifth*, Aerosonic contends that the packing slip is immaterial because "Aerosonic's terms still came last in any battle of the forms analysis via the ***acknowledgement*** sent to Joby on June 29, 2022 (Dkt. 429-4)—not the Packing Slip which arrived upon shipment." Doc. 432 at 5; Doc. 436 at 5. This is another inaccurate representation. The June 29 acknowledgement was sent nearly 3 months after Joby received the probes shipped with the original packing slip in April 2022. This is because the acknowledgment is for a *different order* and thus was not a form exchanged for the same transaction involving the packing slip. *Compare* Doc. 429-4 at 2 (June 29, 2022 email acknowledgement for "PO# PO-004011-2"), *with* Doc. 413-1 at 4 (2022 original packing slip for "PO-001373-3"); Doc. 343-15 at 1 (2025 altered packing slip for "PO-001373-3").

In addition to these multiple inaccurate representations, Aerosonic's Notice lacks specificity about its investigations, policies, and record keeping, or supporting evidence (not even a sworn declaration) for its myriad factual representations. For instance, Aerosonic contends it investigated the issue "in July," but not whether it did so before representing to the Court on July 17 that its 2025 altered packing slip was an authentic copy of the 2022 original packing slip or before conferring with Joby's counsel on July 27—when Aerosonic still offered no explanation for its 2025 altered

packing slip. Aerosonic also does not say when its packing slip template was purportedly changed, by whom, why, or if it had been changed specifically to provide Aerosonic an argument to rebut Joby's defense revealed it its May 19, 2025 motion to dismiss. Indeed, other than Mr. Van Bemden's May 29, 2025 email asking for packing slips for Joby orders (Doc. 429-5) 10 days after Joby's motion to dismiss relied on the 2022 original packing slip, Aerosonic cites nothing to substantiate any of its representations.

### III.  AEROSONIC'S ETHICS ACCUSATIONS FAIL ON THE RECORD AND AEROSONIC, NOT JOBY, VIOLATED A RULE

Aerosonic claims that on July 27, Joby threatened personal sanctions against its attorneys, threatened to report them to the Florida Bar, and threatened Aerosonic's certification, all "solely to obtain an advantage in a civil matter." Doc. 432 at 2, 6. Joby's written demand that day proves otherwise. It sought withdrawal of the 2025 altered packing slip and fees and, failing that, case-terminating sanctions. *See* Dkt. 432-1 at 1-2. The email did not threaten personal sanctions, mention the Florida Bar, or mention Aerosonic's certification. Aerosonic concedes as much: it admits that the written demand "contained no such threats and does not mention the Florida Bar." Doc. 432 at 2. If the purported threats were Joby's leverage, as Aerosonic insists, they would be in Joby's written demand. They are not.

What Joby's counsel actually did is not a Rule 4-2.4(h) violation (or a violation of any rule) at all. At the conference, lead counsel discussed two separate issues: (1) a potential "settlement of the action," as required by this Court's order (Doc. 37 at 6),

9

and (2) the packing-slip record. Pade Decl. ¶ 3. Joby's counsel made no reference to settlement when raising the packing slip, and no reference to the packing slip when discussing potential settlement pursuant to the Court's order. *Id.* Separately, as to the troubling packing-slip record, Joby's counsel re-raised the discrepancy between the two packing slips, noting that Joby had raised this issue on multiple previous occasions, but received no explanation from Aerosonic. *Id.* ¶ 4. Joby's counsel explained that if it learned that Aerosonic's counsel was assisting a fraud, it would have a mandatory duty to report—though, as Joby's counsel expressly stated to Aerosonic's counsel, Joby and its counsel hoped that would not be required. Joby's counsel underscored that this was not a threat and urged Aerosonic to investigate and correct the record. *Id.* ¶ 9 ("I told Mr. Tucker at least twice that this is not and should not be taken as a threat, that I was really trying to avoid this result. I urged him to investigate and correct the record because, as I stated to him, I hated pursuing issues like these and I believe courts hate it even more."); *see id.*, ¶¶ 7-8.

That conduct meets neither element of the rule Aerosonic invokes. Rule 4-3.4(h) bars "threaten[ing] to present disciplinary charges solely to obtain an advantage in a civil matter." Fla. R. Prof. Resp. 4-3.4(h). Joby's counsel did not threaten to present charges; he described his own reporting duty and hoped not to reach it. And Joby's counsel did not raise the subject for any advantage: once on notice of the discrepancy between the packing slips, Aerosonic's counsel had an independent obligation under Rule 4-1.2(d) not to assist in the client's fraud. Thus, Joby's counsel felt bound to raise this issue because Aerosonic's counsel repeatedly refused to confirm whether it was

10

even investigating the issue.

Aerosonic's own case, *Rush*, confirms the line. There, the Florida Supreme Court upheld a section 4-3.4(h) violation where a lawyer threatened a Bar complaint against opposing counsel over a comment allegedly "disparaging his expert witness by commenting that his fee seemed excessive." *Fla. Bar v. Rush*, 361 So. 3d 796, 803-04 (Fla. 2023). The lawyer also "threatened to sue" opposing counsel "for tortious interference of his fee agreement with" his client and "accused her of scheming to defraud him of attorney's fees." *Id.* at 800. Here, Joby's counsel was concerned about an important exhibit upon which Aerosonic was urging the Court to rely and which appeared materially altered on its face. Joby's counsel made no threats at all, but merely requested that Aerosonic provide a sufficient explanation for the facial differences so that Joby would *not* need to file anything. That Joby's counsel did not recite rule numbers at the conference does not change the rules, or Aerosonic's duty to know them.

Aerosonic's own conduct, however, is another matter. Aerosonic's Notice reveals the substance of confidential mediation discussions by comparing them to the parties' July 27 discussions. *See* Doc. 432 at 6. But Aerosonic is not permitted to disclose this information. The Court-ordered mediation was conducted under Local Rule 4.03. Doc. 243 (Ordering that "[t]he mediation shall be conducted in accordance with Rule Four of the Local Rules of the United States District Court for the Middle District of Florida"). Local Rule 4.03(g) ensures that everything at mediation other than the fact of settlement is confidential, and no participant may disclose it without

11

the Court's approval. M.D. Fla. Rule 4.03(g) ("the substance of the mediation is confidential and that no party, lawyer, or other participant is bound by, may record, or without the judge's approval may disclose any event, including any statement confirming or denying a fact—except settlement—that occurs during the mediation"). Florida's Mediation Confidentiality and Privilege Act requires the same confidentiality and authorizes sanctions (including fees and costs) for a violation. Fla. Stat. § 44.405(1) ("A mediation participant shall not disclose a mediation communication to a person other than another mediation participant or a participant's counsel. . . . [A] violation of this section may also subject the mediation participant to sanctions by the court, including, but not limited to, costs, attorney's fees, and mediator's fees."). In compliance with those same rules and statutory requirements, Joby cannot reproduce Aerosonic's improper statements or directly respond to them. But, the comparison Aerosonic makes in its Notice demonstrably reveals a mediation communication, but Aerosonic disclosed it anyway. On this record, the only rule violation is Aerosonic's.

Compounding the harm, Aerosonic filed the Notice on the public docket. Only when Joby informed Aerosonic's counsel that its Notice violates the Court's Local Rules and Florida law, did Aerosonic file an Amended Notice of Withdrawal (Doc. 436), purporting to omit confidential mediation information. But, the Amended Notice has not resolved Aerosonic's violation for at least three reasons. *First*, Aerosonic has already revealed to the Court the confidential mediation information in its original Notice. It cannot belatedly undo that violation with an Amended Notice.

12

*Second*, the Amended Notice does not even excise all confidential mediation information. And *third*, Aerosonic's original Notice (Doc. 432) *remains on the public docket* as of the filing of this Response. Moreover, given that the original Notice has been publicly available for days, it is likely that it is available on many (if not all) third-party docket services. Aerosonic's Amended Notice cures none of these harms.

Aerosonic's list of six prior instances in which Joby raised sanctions changes nothing. Doc. 432 at 7-8; 436 at 7-8. Joby stands by each (each dealt with instances of Aerosonic making clear misrepresentations to the Court). But Joby is not required to seek sanctions piecemeal, and may instead wait for an appropriate motion at a later time. None of it bears on whether the 2025 packing slip was altered. It was, on its face. Doc. 321-15; Doc. 413-1.

## IV. AEROSONIC'S WITHDRAWAL OF THE 2025 ALTERED PACKING SLIP IS INCOMPLETE

Aerosonic's Notice opens by "withdraw[ing] its exhibit at Dkt. 321-15 and related briefing." Doc. 432 at 1. But, as Joby requested, Aerosonic should have withdrawn all versions of the 2025 altered packing list, all portions of briefing that Aerosonic filed that cited, discussed, or otherwise relied on the 2025 altered packing slip, and the portions of Aerosonic's expert opinion that relied on the 2025 altered packing slip. Had Aerosonic just done what Joby requested without making more false statements to conceal the fraud, the issue may have ended. But Aerosonic's withdrawal is drawn narrowly enough to change nothing. Aerosonic gave up one copy of the altered 2025 packing slip (*compare* Doc. 432 at 2, 436 at 2 (withdrawing Doc.

13

321-15) *with* Doc. 415-6; Doc. 430-5), and four specific lines of briefing—and kept everything those lines were there to support.

Starting with the exhibit itself: Aerosonic filed the 2025 altered packing slip at least three more times—twice in its public and sealed reply briefs in further support of its motion for summary judgment and once in its opening motion for partial summary judgment—and withdrew none of those copies. Doc. 415-6; Doc. 430-5; Doc. 343-15. The altered packing slip remains in the record today, exactly where Aerosonic left it, and Aerosonic is still asking this Court to decide its motion for summary judgment while relying on the 2025 altered packing slip.

Most tellingly, Aerosonic never withdrew the key representation at the very center of this dispute: that its 2025 altered packing slip is an authentic copy of the 2022 original. Specifically, Aerosonic has not retracted its statement to the Court that the 2025 altered packing slip "is from its database with an accompanying email corroborating its authenticity." *See* Doc. 415-1 at 6 (citing Doc. 415-6); Doc. 430 at 6 (citing Doc. 430-5). A party that believed it had mistakenly filed an altered, and thus inauthentic, document would not only withdraw the altered document, but would also stop pressing its authenticity and correct that representation to the Court. Aerosonic left its misrepresentation standing.

Not only did Aerosonic leave the 2025 altered packing slip in the record, but it also left its argument that the 2025 altered packing slip incorporated Aerosonic's Terms & Conditions that prohibited reverse engineering. For example, Aerosonic's argument that Joby's terms "were not even last in line" because Aerosonic's terms

14

appeared on that 2025 altered packing slip remains in the record in Aerosonic's public and sealed oppositions to Joby's partial motion for summary judgment. Doc. 380-1 at 16; Doc. 402 at 16.[6] As does Aerosonic's argument in its public and sealed motions for partial summary judgment that the 2025 altered packing slip's contents defeat Joby's battle-of-the-forms position. Doc. 321 at 5; Doc. 343 at 5. In addition, Aerosonic's expert, Patrick Moynihan, relies on the same 2025 altered packing slip, and Aerosonic did nothing to withdraw that portion of Moynihan's opinion. Doc. 329-2 ¶ 50, n.93. And Aerosonic continues to cite the 2025 altered packing slip in its recitation of facts in its public and sealed oppositions to Joby's motion for partial summary judgment. Doc. 380-1 at 7, 10; Doc. 402 at 7, 10.

Aerosonic has surgically withdrawn only one filed instance of the 2025 altered packing slip at Doc. 343-15 in a manner that leaves these arguments and other filed instances untouched. Aerosonic tells this Court that the "withdrawal has no effect on Aerosonic's pending arguments." Doc. 432 at 8; Doc. 436 at 8. Aerosonic is right—because it withdrew only one instance of the altered exhibit while keeping every argument incorporating the exhibit that it needs on summary judgment.

Finally, Aerosonic did one more thing a genuine withdrawal forecloses. After filing its Notice promising it "will not affirmatively introduce the Packing Slip at trial,"

---

[6] There are no terms and conditions on the 2022 original packing slip; only on Aerosonic's 2025 altered packing slip, so the argument is wholly dependent on Aerosonic's 2025 altered packing slip. In a subsequent brief Aerosonic pivoted away from the representation that its 2025 altered packing slip was the "last in line" (apparently realizing it was committing a fraud on the Court but unwilling to come clean) and tried to rehabilitate this argument with another false statement—that an order acknowledgment *for a different order* was the last form. *See* 415-1 at 6. Aerosonic made that same argument in the Notice, which is discussed above as the "fifth" point in Section II.

15

Doc. 432 at 5; Doc. 436 at 5, Aerosonic served on Joby an updated exhibit list—and kept the 2025 altered packing slip on it, together with the email from Aerosonic's VP of Engineering, Greg Van Bemden, that Aerosonic offered to purportedly authenticate the 2025 altered packing slip. *See* Ex. B (annotated excerpt of Aerosonic's exhibit list showing PX-0067 and PX-0645). This is particularly troubling because the 2022 original packing slip and its purported certification of conformity is material to Joby's counterclaim for breach of product warranties. *See* Doc. 97 ¶¶ 125-141. Aerosonic's purported withdrawal leaves open the possibility that Aerosonic will rely on its 2025 altered packing slip in connection with defending that counterclaim. A party cannot list a document as a trial exhibit and disclaim it in the same breath.

A withdrawal of an altered document that leaves copies of the same altered document in the record, the representation of its authenticity uncorrected, the arguments incorporating the document intact, and the document on the trial exhibit list withdraws nothing. Rather, it counsels additional inquiry, including at minimum an evidentiary hearing to determine the existence and extent of the presumable fraud.

Dated: July 31, 2026                    Respectfully submitted,


                                        */s/ Jeffrey A. Pade*
                                        Jeffrey A. Pade

                                        Paul Thanasides
                                        Florida Bar No. 103039
                                        **MCINTYRE LAW FIRM**
                                        1228 E. 7th Ave. Suite 100

16

Tampa, FL, 33605
paul@mcintyrefirm.com
clservice@mcintyrefirm.com

Naveen Modi, *PHV*
Jeffrey A. Pade, *PHV*
Sripriya Narasimhan, *PHV*
**PAUL HASTINGS LLP**
2050 M Street NW
Washington, D.C., 20036
Telephone: (202) 551-1700
naveenmodi@paulhastings.com
jeffpade@paulhastings.com
sripriyanarasimhan@paulhastings.com

Rob Unikel, *PHV*
Mark Thomas Smith, *PHV*
Summer Stevens, *PHV*
**PAUL HASTINGS LLP**
71 S Wacker Drive, Suite 4500
Chicago, IL, 60606
Telephone: (312) 499-6000
robertunikel@paulhastings.com
marksmith@paulhastings.com
summerstevens@paulhastings.com

Richard Rothman, *PHV*
PAUL HASTINGS LLP
200 Park Avenue
New York, NY, 10166
Telephone: (212) 318-6000
richardrothman@paulhastings.com

*Counsel for Defendant*

17

## CERTIFICATE OF SERVICE

I CERTIFY that on July 31, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ *Jeffrey A. Pade*
Jeffrey A. Pade

18